## Pepper *versus* The City of Philadelphia to use of Horter.

1. Where a pavement of a street by the municipal authorities at the expense of the property owners benefited thereby, is so far perfected as to answer the intended purpose, and it is taken possession of, no mere imperfection or omission, which does not virtually affect its usefulness can be interposed to prevent a recovery, subject to a deduction for damages consequent upon the imperfection complained of; this indulgence is not however to be so stretched as to cover fraud, gross negligence or obstinate and wilful refusal to fulfill the whole engagement, or even a voluntary or careless abandonment of it.

2. Where the contractor for paving a street receives the assessment

bills against the property owners in payment from the municipality and it turns out that his work was so defectively done as to be worthless, he has no just right to recover in an action against the property owner, and the latter is not precluded from making defence because he is not a nominal party to the contract.

3. Where a jury in announcing the verdict makes a mistake as to the proper amount of damages assessed, the mistake may be corrected before the jury is discharged, even though the court has recorded the erroneous amount.

4. Where owners of rural property protest against the passage of an ordinance providing for paving a street passage through it at their expense by frontage assessments, not because it is rural property, but for other reasons, they will be estopped from setting up the defence that the property is rural in an action to collect the assessments.

5. Contracts for paving lawfully made at the discretion of municipal authorities are binding upon the land owners charged with the payment of the price of the paving, though injudiciously made; but they are entitled to have such contracts performed substantially in all things according to their terms, and the authorities have no power to dispense with such performance to the gain of the contractor and the loss of the land owners.

January 19th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia county*: Of January Term 1885, No. 212.

This was a *scire facias sur* municipal claim for paving, filed by the city of Philadelphia to the use of H. and L. Horter against the property of Edward Pepper.

To it the defendant pleaded the general issue, and specially that the property against which the claim was filed was farm land, and was used as such at the time the work was done, and at the time the pleas were filed; that it was so classified for the purpose of taxation; that all the properties on that street where the paving had been done was rural property, though part was built upon; that part of the property was still wood or timber land; and that the assessment against all the properties had been made according to the per foot front rule of assessment; that the paving constituted a general public benefit, and was not merely a local improvement; and that the work was done for the use, benefit and behoof of the general public. To these pleas plaintiffs replied expressly admitting the truth thereof, but averring that the property was not exempt because defendant agreed in April, 1874, that said paving should be done under the direction of the department of highways, and by reason thereof the contract was made.

The following is the agreement referred to :

We, the undersigned, owners of property fronting on Sixty-

third street, from Market street to Haverford avenue, do hereby covenant and agree to and with William A. Frederick, to grade, curb and pave the said street within the points named. He, the said William A. Frederick, is to furnish all labor and material necessary thereto and therefor, and do the work in a satisfactory manner, and under the direction of the department of highways.

Defendant rejoined that the agreement referred to was for personal services with one William A. Frederick, and that plaintiffs' contract was not made by reason thereof, but by virtue of the ordinance of councils only. Plaintiffs surrejoined that nothing in the rejoinder barred a recovery, because by an ordinance of December 3d, 1878, it was provided that all contracts for street paving entered into by the department of highways, under which work was done was thereby ratified and approved. The issue was thus made as to those pleas.

The following is the ordinance of December 3d, 1875, referred to :

That an ordinance entitled "An ordinance in relation to contracts for street paving," approved December 31st, 1862, be, and the same is, hereby repealed, and all contracts for paving streets entered into by the department of highways, under which work has been done under resolution or ordinance authorizing the same, be, and are, hereby ratified and approved.

Defendant further pleaded that the property was not benefited to the extent of the claim filed, to which plaintiffs replied that it was ; that the street was not a public highway, to which plaintiffs replied that it had been dedicated to public use by a former owner ; that the ordinances as to the quantity and quality of material had not been substantially complied with, to which plaintiffs replied that they had ; and that the work had been done at a time when councils had by ordinance declared that it should not be, and that if it was the contract should be invalid without notice, to which no formal reply was made.

The facts as they appeared in the trial are set out in the following opinion of the court filed on discharging a rule for a new trial.

In the year 1874, the owners of property on Sixty-third street, from Market street to Haverford avenue, agreed in writing with William A. Frederick to pave the said street, under the direction of the department of highways, and on January 13th, 1875, Frederick assigned the contract to Hiram and Lafayette Horter, the use plaintiffs. On April 3d, 1875, the councils of the city by ordinance directed the chief commissioner of highways to enter into a contract with a compe-

tent paver or pavers for the paving of Sixty-third street, between the points above named, with rubble pavement; and on May 6th, 1875, the contract was awarded to Messrs. Horter. This is the usual manner of proceeding to have a street paved in this city. The property owners agree to have the street paved under the directions of the department of highways, an ordinance is passed and the contract awarded. That the agreement is assigned, is unimportant; the property owners want the street paved and the public want a competent paver, all of which was obtained in this case. Testimony was given to show that Frederick was a quarryman and not a paver, that the Horters were skilled pavers, and that the stone used to carry out the contract was furnished by Frederick. The time for doing the work was extended by the Chief Commissioner of Highways to the year 1876, during which year the work was done. The power of the councils to order the paving of the street, the kind of material to be used, and to fix the price therefor, is no longer open to question: City *v.* Hays, 93 Pa. St. R., 72.

To a claim filed against the property of the defendant, he pleaded among other things, that the locality was rural or suburban, and that the paving was a general public improvement, and not a local benefit, and that he ought not to be charged therefore by the foot front rule of assessment. To this the plaintiffs replied that although the locality was rural, yet it was not exempt from payment of their claim, because the defendant agreed in writing that the paving should be done; and after some further pleading issue was joined.

The first question raised is this: Can the defendant avoid liability for paving in front of his property on the ground that the locality was rural and the work a general public improvement, and not a special benefit to the locality, when he has agreed that it shall be done? Following the judgment of the Supreme Court in Bidwell *v.* The City of Pittsburg; 85 Pa. St. R., 412, and McKnight *v.* Same, Id., 273, I held that he was estopped, and ruled out his offers to prove that the property was rural and was not benefited by the paving. The facts were admitted by the replication, and on those facts the law is against the defendant. The agreement was for paving the street, to be done under the directions of the department of highways. It was assigned to the use plaintiffs, and they obtained the contract from the city and did the work. It would be a great injustice to permit the defendant to defeat their claim for payment on an objection of this kind, when he has, by writing, induced them to lay out their money and labor for the improvement of the street in front of his property. The plaintiffs had a right to rely on the writing, and

infer that the defendant would not set up this objection to their claim.

The next question concerns the dedication of Sixty-third street to public use. It was opened and used, according to the testimony of the witnesses, more than twenty-one years before it was paved in 1876, and at one time there was a plank road on it. The defendant's deed calls for it as a boundary, and so do other conveyances of property on that street made since 1854. Stronger evidence of dedication by matter *in pais* cannot be had : Schenley *v.* The Commonwealth, 36 Pa. St., 29 and 62.

In view of the fact that the verdict is for the full amount of the claim, I do not see that the defendant was injured by the instruction to the jury, that if they were satisfied that the charge made for the work was greater than the value of it, they could allow the value of the work, and that if the work was done in substantial compliance with the ordinances of councils the plaintiffs could recover. The proof was convincing that the work was well done ; the defendant conceded that the stones were the best of rubble stone which could be obtained ; and the gravel produced in court satisfied the jury that it came up to the standard. Numerous witnesses owning property on that street testified that the paving was a good piece of work, that it had lasted eight years without requiring repairs ; and it was not without great effect that the plaintiffs showed that forty-three out of forty-six owners of property on the line of that street paid their bills without suit.

When the jury returned to render their verdict, the foreman, in response to the usual questions, said that they found for the plaintiffs, and when asked for the amount of the damages, replied, " the full amount of the claim," and when asked for the amount in figures, he said $1,558.59. Noticing that the jurors were looking about at each other in an uneasy manner, I asked the foreman to send up the paper which he had in his hands. On examining it I could not find the figures on it which the foreman had given. It had on it the figures $1,658.59, being the principal of the plaintiff's claim, but the figure 6 was written so that it resembled the figure 5. The jury were yet together ; they had not yet been discharged. I told them to look over the paper again and say whether we had the proper amount of the verdict. They again consulted in the court room, and then the foreman said that they found for the plaintiffs and assessed the damages at $2,470.98, principal and interest. It will be noticed that the jury had not been discharged nor separated ; the first rendering of the verdict by the foreman was self-contradictory and manifestly in-

correct ; the verdict was for the full amount of the claim, and yet the figures given were less than the principal of the claim; it was a plain mistake. Courts have the right to correct such plain mistakes on the instant, before they have taken effect, without the delay and expense of a new trial, provided the jury have not yet been discharged. This is a discretion which is left to the trial court, and unless in case of a flagrant exercise of it, the Supreme Court will not review it: Reitenbaugh v. Ludwick, 31 Pa. St., 141. (Last six assignments of error.)

During the consideration of the ordinance of April 3d, 1875, to provide for said paving, the following protests by the defendant et al. were presented against its passage :

" That we consider it premature and inexpedient to have the said street paved at this time. There is very little travel now (since the paving of Market street to the city line), on Sixty-third street, except light driving. It is a wide avenue, with double rows of trees on each side, and is a beautiful drive for light vehicles or pleasure carriages. We consider that the paving of it, especially with rubble pavement, would ruin it as a pleasure drive. There is no necessity for it, and at this time, when property cannot be sold, it would cause a very heavy and needless expense to the property owners along it, many of whom have but recently built upon it, and are not now prepared for the additional heavy outlay which the paving would put upon them.

" We, the undersigned owners and residents on Sixty-third street between Market street and Haverford avenue, having signed a remonstrance against the paving of said Sixty-third street at the present time, and having produced the signatures of owners on said Sixty-third street, representing a majority of the feet fronting thereon, hereby protest against the said paving until we, the said owners, are prepared to have it done, and most emphatically enter our protest against paving it with rubble pavement at any time. We, therefore, respectfully inform your honorable bodies that we are not prepared to have it done, and enter this our protest against it."

The following notice was also served on the contractor by the defendant et al. :

" WEST PHILADELPHIA, September 4th, 1875.
" MR. LAFAYETTE HORTER :

" Dear Sir :—We, property owners on Blockley avenue, or Sixty-third street, have been informed that you are about to curb and pave the said street from Market street to Haverford avenue. Now, in behalf of ourselves and other property owners fronting on the said street, we protest against the work being done, and warn you that if you proceed it will be at

your own risk; because a majority of the property owners have protested against it, and because Blockley avenue is private property, it never having been dedicated to public use or taken by any lawful proceedings as and for a public highway."

During the trial, the defendant's witness being on the stand, the court excluded as irrelevant the following questions:

Please state what occurred between you, as attorney for Edward Pepper and William A. Frederick, in relation to this paper (the agreement between the property owners and Mr. Frederick), at the time of the signing thereof? (Nineteenth assignment of error.)

Please state whether or not there was any condition precedent made, and stated by you when you signed this paper, and if so, what it was? · (Twentieth assignment of error.)

Under objection of the defendant the court admitted in evidence the following ordinances:

Section 10, of the ordinance of December 23d, 1874, which was as follows: The owners of property desiring to have the streets which shall pass through their property paved, shall apply to councils by petition, to which shall be attached a certificate of the district surveyor that the petitioners are a majority of the owners of property between the points named. After an ordinance shall have been passed for the paving of any street, it shall be the duty of the chief commissioner of highways to award a contract for the same to a practical paver or pavers regularly engaged in such business. (Twenty-second assignment of error.)

Ordinance of December 3d, 1878, which was as follows: That an ordinance entitled "An ordinance ·in relation to contract for street paving," approved December 31st, 1862, be and the same is hereby repealed, and all contracts for paving streets entered into by the department of highways, under which work has been done under resolution or ordinance authorizing the same, be, and are, hereby ratified and approved. (Twenty-third assignment of error.)

The defendant presented, *inter alia*, the following points for charge:

17. Under the pleadings in this case the verdict should be for the defendant. This point I refuse. (Ninth assignment of error.)

12. That as the paper signed by the property owners does not provide a method by which the amount they shall be called upon to pay for said paving shall be determined, there is nothing in this case to prevent their objecting to the present mode of assessment, and therefore, if the jury find that this was rural property, and was assessed according to the per foot

front rule of assessment, their verdict should be for the defendant. The twelfth point I have answered in the general charge.

9. That as neither the commissioner of highways, the councils of the city of Philadelphia, nor the city of Philadelphia herself, could legally make a contract for street paving in a rural district which should provide that the property owners should be charged according to the per foot front rule of assessment, the ordinance of councils of December 3d, 1878, approving prior contracts is of no validity as against the defence interposed in this case. The ninth point I also refuse. (Eleventh assignment of error.)

19. There being no proof that by reason of the signing of the paper by the property owners, the city of Philadelphia, or the highway department, entered into the contract to pave, the verdict should be for the defendant. The nineteenth point I refuse, because it requires the court to inquire into the motives of councils. Their motives are not a subject of inquiry by a court. (Twelfth assignment of error.)

20. If the jury believe that the contract to pave was entered into solely by reason of the ordinance of councils, and not by reason of the paper signed by the property owners, their verdict should be for the defendant. The twentieth point I refuse, because the parties having signed the paper, they are estopped from setting up the defence that the property is rural. (Thirteenth assignment of error.)

14. If the jury believe that the property owners signing the paper protested against the paving of Sixty-third street, and despite that protest the contract was made and the work done, their verdict should be for the defendant. The fourteenth point I refuse, for the same reason, to wit, for the reason given in refusing the thirteenth point, which reason was as follows : The thirteenth point I refuse because councils may direct streets to be paved without a petition, but in this case there was a petition. (Fifteenth assignment of error.)

10. That the plaintiffs cannot claim any benefits from the paper signed by the property owners, unless they show that it was assigned to plaintiffs by Mr. Frederick with the knowledge or consent of the defendant. The tenth point I refuse. The paper which the parties signed speaks for itself. It is, you will remember, the paper which the parties signed requesting that the street be paved. It speaks for itself, and it is not alleged nor proved that any stipulation entered into is omitted by fraud, accident or mistake of the parties. If parties put their signature to a writing containing their agreement, they cannot add to it or take from it without proof that they were induced to sign by fraud, overreaching, accident or mistake.

That is the reason I rejected the testimony here to show the conversations and circumstances that took place at the time of signing the paper, because those conversations and other things are merged in the paper when it is signed, and there would be no use of signing a paper if the parties were allowed to come into court and contradict it entirely. (Sixteenth assignment of error.)

16. If the jury find that the pavement, as laid by the contractors, was not done in substantial compliance with the ordinances of councils, either as to depth of gravel, the quality of the gravel, or the size of the stone, their verdict should be for the defendant. The sixteenth point I refuse. A contractor can recover the value of the work not done in substantial compliance with the ordinance of councils. (Seventeenth assignment of error.) In the general charges the court instructed the jury, *inter alia*, as follows:

The defence is, that the property is rural, that is, that Sixty-third street is in a rural locality, that the paving of the street is a public improvement, not a local improvement, but simply intended for the general welfare of the entire city, and which ought to be charged to the general taxation fund and paid out of the city treasury, and not charged against the adjoining owners. Municipal assessment—that is the more proper term to use—municipal assessments, or claims for paving streets, are a species of taxation. Every property is liable in this city to be taxed once for paving in front of it; and once taxed for the paving it goes free afterwards for all other expenses in the way of re-paving or paving anew. Keeping the streets in repair is a charge to the city generally, and after a man has once paid for having paving done, if the city repair the street, or if the city entirely re-pave it, she cannot charge it against the owner of the property, but must charge it to the general fund. But every city lot is liable to be assessed once for paving done in front of it. This rule, which authorizes the city to charge the assessment, or to assess the charge against the adjoining lot, does not, however, apply to rural or farm property, and therefore where the city projects an avenue through farm property which is not cut up into compact city lots, nor built upon as city lots, the property is not liable to be charged by the per foot front rule of assessment, to wit, $1.50 a foot. City councils have power to enact that a street shall be paved. That power is vested in councils by law. They shall determine the time when it shall be paved; [they have a right to determine what kind of a pavement, the material to be used, and they have a right to fix an uniform price to be paid by all the owners]. These are powers vested in the city legislature or councils, and the property owners may petition for paving

[Pepper v. City of Philadelphia.]

or ask for another kind of pavement, but where the city authorities elect that a certain kind of pavement shall go down, all disputes as to the kind of pavement are at an end. The power is lodged by the people generally in councils. It is not wise to permit one jury to say what kind of pavement ought to have been put down, and for another jury to select another kind, but it shall be as councils shall select. When councils say that a certain kind of pavement shall be put down, then the adjoining properties become liable, unless the adjoining property is farm or rural property, and then it is not liable to be charged by the per front foot rule of assessment [and the property owner may prove that the property is rural, and therefore not liable, or he may prove that the work was not done at all, or he may prove that the price charged for the paving is more than the value thereof. These are the only defences to a municipal claim]. (Eighteenth assignment of error.)

. Now, if this defendant set up as a defence and produced evidence that the property was rural or farm property, you might have some doubt upon that question to solve. However, that question is taken out of case by the pleadings of the parties. [The city—the contractors—have for the sake of narrowing the issue down, admitted in the pleadings that this street is in a rural neighborhood, but they say the defendants are estopped from setting up that defence because they signed a petition for the paving of the street. Well, gentlemen, if that answer is made out and proven to your satisfaction to be true, it is a legal answer to the objection that the street is rural. Now, Pepper's signature to the petition for paving is admitted beyond any question whatever, and by all law and all justice he is estopped from setting up the defence that this street is a rural street, and that the paving was not a local benefit merely but a general one. A man cannot blow hot and blow cold. He cannot induce the city to have his street paved and have contractors take the contract and do the work, and all the time reserve to himself the right to object to paying for the paving because the street is rural. Therefore, when Pepper signed that petition to have the street paved, he estopped himself from setting up the defence that this street was a rural one]. (Fourteenth assignment of error.)

The next defence set up by them, is whether the price charged for the paving is greater than the value thereof. Now, gentlemen, upon that point there has been a great deal of testimony—I do not propose to go over it all in detail. You have had the proof here that there were forty-six owners of property along the street, and of them forty-three paid their

bills.   Of these owners a good many came before you and
testified that the work done, as done, was a good job, and said
that it has lasted ever since 1876 without any repairs being
done upon it.   The defence admitted that the stone is good
rubble stone.   No defence is made upon that score, and the
only defence left is that the gravel used is not good, sharp
gravel, and that not enough gravel was used as is required by
the ordinance.   You have had the gravel brought before you
and it will go out with you—samples of it.   You have had
the testimony of witnesses who have examined it in various
places.   You have the testimony of other witnesses that, upon
an average, it was of the depth required by the ordinance,
and that the work as done was a good job, and lasted since
without repair.   Gentlemen, if the work was done by the
contractors in substantial compliance with the ordinance of
councils, they are entitled to recover.   Instances here and
there of a shallow depth of gravel would not defeat the right,
unless they convince you that the whole work was not of the
required depth, or unless the gravel supplied was not such
gravel as is required for paving.   If you find that there was
a substantial compliance with the ordinance of councils, that
plaintiffs dug out this street to the required depth, put in
good gravel, put down good stone and did a good job in com-
pliance with the ordinance of councils, they are entitled to
recover.   [On the contrary, if you are satisfied that the charge
made for that work is greater than the value of the work, you
may, in that case, allow the plaintiffs the value of the work.
Upon this point, gentlemen, there is no evidence to show what
proportion ought to be allowed on a bill of this kind for the
depth of gravel furnished, there having been no estimate
given you, and you may have some difficulty in finding what
sum to allow where the proof is so meagre upon the point.]
     Therefore, to resume, gentlemen, I say that Pepper is estop-
ped from setting up the claim that the property is rural.
     Verdict for the plaintiff in the sum of $2,470.98, and judg-
ment thereon, whereupon the defendant took this writ, filing
the above assignments of error.   The first eight assignments
of error were to the dismissal of the defendant's reasons in
arrest of judgment.

     *Alexander Simpson, Jun.*, for plaintiffs in error.—A muni-
cipal claim for paving is not unconstitutional, though the pav-
ing be done in a rural district.   The city may order paving to
be done in any part of the city, with or without a petition or
agreement, or even the consent of the property owners.   It is
only the "per foot front rule of assessment" that in rural dis-
tricts is unconstitutional: Seely *v.* The City of Pittsburgh,

[Pepper v. City of Philadelphia.]

1 Norris, 360. The agreement that plaintiffs invoke as an estoppel provides nothing as to the mode of payment or assessment. It cannot, therefore, operate as an estoppel upon that point, for that point is not treated in it. Hence, as we defend only upon that point, we cannot be estopped, and the mode of assessment being unconstitutional, the claim filed under that mode of necessity falls: Seely v. The City of Pittsburgh, 1 Norris, 360. An estoppel will always be strictly limited to the representation made: Bigelow on Estoppel, p. 451.

The case of Bidwell v. The City of Pittsburgh, 5 W. N. C., 41, relied upon by use plaintiffs, is essentially different from the one now before the court.

The agreement being for personal services, there can be no estoppel, either as between the defendant and the city, or as between the defendant and the use plaintiffs, for it is *res inter alios acta*, and in such case there can then be no estoppel: Eldred v. Hazlett, 9 Casey, 316; Bigelow on Estoppel, p. 442; Railroad Co. v. Schuyler, 38 Barb. (N. Y.), 534; Longwell v. Bentley, 3 Grant, 177; Schuhman v. Garratt, 16 Cal., 100; Lansing v. Montgomery, 2 Johns. (N. Y.), 382; Griffin v. Richardson, 11 Iredell (N. C.), 439; Worcester v. Green, 2 Pick. (Mass.), 425; Langer v. Filton, 1 Rawle, 141.

" Where a party claims to establish his right merely by estoppel, the instrument by which the estoppel is supported should be precise, clear and unequivocal, not depending upon doubtful inference:" Rich v. Hotchkiss, 16 Conn., 409; Lajoye v. Primm, 3 Mo., 369; Bolling v. The Mayor, 3 Rand (Va.), 563; Bigelow on Estoppel, p. 441; Wright's Appeal, 3 Out., 425.

The property owners who are alleged to be estopped having protested strenuously before as well as after the ordinance was passed, before the contract was made, and before the work was done, to councils and to the contractors, how can it be said that the plaintiffs were ignorant of the opposition of the owners? yet without that there could be no estoppel: Bigelow on Estoppel, 437; Patterson v. Lytle, 11 Pa., 53; Musser v. Oliver, 21 Pa., 362; Troxell v. Iron Co., 42 Pa., 513; Ayres v. Watson, 57 Pa., 360.

If the agreement was a personal agreement, as the pleadings admit, then an assignment without the knowledge or consent of defendant is of no validity as against him: Robson v. Drummond, 4 B. & Ad., 303; Stevens v. Benning, 31 Eng. L. & Eq., 283; Davenport v. Gentry, 9 B. Mon. (Ky.), 427.

This court held, in the five cases of City to use of Peters v. Devine, 35 Leg. Int., 171, that an agreement between the contractor and the property owners at the time of signing a peti-

[Pepper *v.* City of Philadelphia.]

tion, as to the price the latter should pay, was enforceable, and the amount agreed upon was all that could be recovered.

It has been held that it is admissible to show a condition precedent to the signing a paper used in evidence by the other party, because it would be a fraud to permit the paper to be used without showing the condition upon which it was signed: Hoopes *v.* Beale, 9 Norris, 82; Renshaw *v.* Gaus, 7 Barr, 117; Rearich *v.* Swinehart, 1 Jones, 233; Lippincott *v.* Whiteman, 5 Norris, 244.

When the first verdict was received and recorded, the function and duty of the jury was at an end: Walters *v.* Jenkins, 16 S. & R., 414, affirmed in Reitenbaugh *v.* Ludwick, 7 Cas., 141.

Had the paper the judge got from the jury been filed as part of the verdict, it would have been disregarded, and the oral recorded verdict alone taken: Dornick *v.* Reichenback, 10 S. & R., 84; Rees *v.* Stille, 38 Pa. St., 138; Wood Paving Co. *v.* Bickel, 37 Leg. Int., 132.

*David W. Sellers,* for defendant in error.—There was no error in calling the attention of the jury to the mistake made by their foreman in announcing the verdict: Rittenbaugh *v.* Ludwick, 31 Pa. St., 141.

The city could have paved Sixty-third street, if she proposed to pay for it out of the general treasury, without the leave of the owners: Slocum *v.* City, 11 W. N. C., 167 (1881). Now we have it suggested that the contractor cannot be paid by the owners because the property described in the claim was rural;—he cannot be paid by the city under the terms of his contract: Horter *v.* City, 13 W. N. C., 40 (1883); and as there is no other mode provided in the city of Philadelphia to collect charges for paving than the one pursued by municipal claim, the legal interpretation of the writing must be on the reasoning of the plaintiff in error, that the parties meant that the contractor was to be allowed to do the work for the simple pleasure of being occupied!

On the sixteenth assignment. It is a mistake to suppose this was a personal action, or to be so reasoned. The case was to be tried irrespective of the use man. The following cases show this: City to use *v.* Wister, 11 Casey, 427; Shirley *v.* City, 12 Casey, 29; Wister *v.* City, 3 Grant, 311.

Mr. Justice TRUNKEY delivered the opinion of the court, October 4th, 1886.

In the city of Philadelphia the power to ordain the paving of the streets is vested in the councils. On December 23d, 1874, the councils enacted an ordinance providing that per-

sons desiring to have the streets through their property paved, may apply by petition, with a certificate of the District Surveyor that the petitioners are a majority of the owners of property between the points named; and after the ordinance shall have been passed, it shall be the duty of the Commissioner of Highways to award a contract for the same to a practical paver or pavers regularly engaged in the business. The ordinance providing for the paving of Sixty-third street, between Market street and Haverford street, was enacted April 3d, 1875; and the contract was made on the 6th day of the next month.

Property owners, including the plaintiff, signed a writing agreeing with William A. Frederick to grade, pave and curb said street, he to furnish the material and do the work under the direction of the Department of Highways. On April 27th, 1874, the District Surveyor certified that the signers were a majority of the owners of property between the points named. It cannot be pretended that there was a valid contract for paving the street between Frederick and the owners of property. Though the paper is not in the form of a petition, it is a clear expression of desire that the street should be paved—the parties knew that all the terms of a contract would be prescribed by the city, the contract made by the city, and the work supervised and accepted or rejected by the city authorities.

While the ordinance relative to paving the street was pending in the councils, some of the owners of property presented protests against its enactment on the ground that it was premature, inexpedient, unnecessary, needless expense to owners of property along the street, many of whom had built upon it, and they did not want rubble pavement. Some of the owners, September 4th, 1875, warned the contractors that they would do the work at their own risk, "because a majority of the property owners have protested against it, and because Blockley avenue is private property;" and again, May 20th, 1876, they notified the contractors "that the whole bed of said street between Vine street and Haverford avenue is private property," and the work they were doing would be done at their risk and expense. In all their communications to the councils and contractors was no hint that the street was in a rural district. Frederick transferred, by assignment, the paper he had received from the property owners, on January 13th, 1875; the property owners never retracted that paper. They never notified Frederick or his assignee that they would refuse payment of assessments because their property was rural.

It is not for mere silence that property owners who signed that paper will not be heard now to say in defence that their lots fronting on the street are not urban. They were actors;

they first moved for construction of the pavement; afterwards, when the councils began to act, they protested, giving reasons which failed to satisfy councils that action should be postponed; they ought to have said then that the lots were rural if they intended to rely on such objection. They did more than simply to protest, they gave many reasons, and will not now be permitted to set up a thing which was not mentioned until after the work was done. They acted with knowledge of the law, that the cost of paving the streets should be assessed on the owners of abutting lots. The paper was silent as to the method by which they should be called upon to pay the amount properly chargeable to each for the paving, for the obvious reason that the laws and ordinances, operative in the city, determined that matter. Under those enactments, applicable to urban property, were all their acts, protests, and omissions to deny liability for frontage assessments.

As the paper in effect was no more than a request to provide for the pavement, conversation at and preceding the time of signing it, between the signers and Frederick, was properly excluded. It was not proposed to prove that then, or at any time prior to the completion of the work, any signer of the paper alleged non-liability for frontage assessment, for any cause other than that the street was private property, or that the property owners had protested to councils against immediate paving.

The first sixteen assignments, and the nineteenth, twentieth and twenty-first assignments are not sustained.

Nor is the twenty-second assignment sustained. If for no other purpose, the ordinance of December 23d, 1874 was pertinent to show the authority of the chief commissioner of highways to execute the contract for the city. But it was enacted more than three months before the councils provided for the paving of the street, and was evidence in connection with all the papers which were signed by the property owners and presented to the councils.

The contract, on its face, required completion of the work by the first day of December, 1875, and the time had been extended by the chief commissioner of highways. Therefore, the ordinance of December 3d, 1875, was pertinent evidence. It showed a ratification of the contract for extension of time for performance of the work. In other respects it had no effect on Horter's contract.

Remark on the points raised in the last six assignments, is unnecessary. It is well shown by the court below, that before the verdict is recorded and jury discharged, a mistake may be corrected. The record shows the jury had not been discharged before they corrected the mistake in the amount of

[Pepper v. City of Philadelphia.]

the verdict; and when the true amount was rendered and recorded, they were discharged. True, the sum first entered on the record ought to have been struck off; and the record may yet be amended by order of the court.

The remaining assignments are the seventeenth and eighteenth, which set forth the instructions that the plaintiff could recover the value of the work not done in substantial compliance with the ordinance of councils; and that the only defence that the owner or defendant may prove is, that the property is rural, or that the work was not done at all, or that it was of less value than the price charged.

As advised, the Act of April 19th, 1843, P. L., 242, which limits the defence to certain matters, does not apply in this case. It appears that the street where the work was done is in West Philadelphia, a place not incorporated at the date of that Act, and consequently not within its operation: Craig v. City of Philadelphia, 89 Pa. St., 269.

From the time the paper was given to Frederick it was contemplated by all parties that only the city could prescribe the terms and give the contract for paving, and that the property owners should pay therefor in respective proportions to their frontage. The contractor covenanted to do the work in accordance with all the ordinances and resolutions relating to paving, and the city covenanted to pay therefor in assessment bills, except the intersections at cross streets, the city to pay for such intersections in money; said assessment bills to be taken without recourse to the city in the event of failure to collect any part or the whole. The work was to be done under the direction and approval of the chief commissioner of highways. It was done by August 1st, 1876, accepted, ever since possessed and enjoyed by the city, paid for according to the terms of the contract; and this action is to recover the tax on one of the property owners for his share of the cost of the improvement. There is no evidence of fraud or collusion by contractor or city official. For eight years no defect was seen in the work, and none was discovered until the digging of holes in search for it.

Where a party has acted honestly, with intent to fulfil his contract, has performed it substantially, but has failed in some comparatively slight particulars, the other party cannot hold and enjoy the fruits of his labor without paying a fair compensation according to the contract, receiving credit for whatever loss or damage he suffered: Preston v. Phinney, 2 W. & S., 53. But a defective, negligent and worthless performance is the same as no performance at all: Miller v. Phillips, 31 Pa. St., 218. The doctrine seems to be this: "Where a thing is so far perfected as to answer the intended purpose, and it is

taken possession of and turned to that purpose by the party for whom it was constructed, no mere imperfection or omission, which does not virtually affect its usefulness, can be interposed to prevent a recovery, subject to a deduction for damages, consequent upon the imperfection complained of. Of course, the indulgence is not to be so stretched as to cover fraud, gross negligence, or obstinate and wilful refusal to fulfil the whole engagement, or even a voluntary and causeless abandonment of it: Danville Bridge Co. *v.* Pomroy & Colony, 15 Pa. St., 151.

Municipal authorities in the making of street improvements authorized by law to be made at the expense of the owners of lands to be benefited thereby, are to a certain extent the agents of such owners. Contracts lawfully made at the discretion of the authorities, are binding upon the landowners, though injudiciously made; but the owners are entitled to have such contracts performed substantially in all things according to their terms, and the authorities have no power to dispense with such performance to the gain of the contractor and the loss of the property owners. If the authorities are about to accept and pay under a contract, for what in substantial and important respects has not been performed, the property owners may have remedy to enjoin the wrongful payments: Schumm *v.* Seymour, 9 C. E. Green, 143. There, it was held that the remedy is in equity. But in this state, where by the laws and ordinances the contractor receives the assessment bills in payment from the city, and it turns out that his work was so defectively done as to be worthless, he has no just right to recover in an action against the property owner, and the latter is not precluded from the defense because he is not a nominal party to the contract. If the work was substantially done as contracted for, answers the intended purpose, but in some minor particulars which do not materially affect its usefulness the contractor failed, then the property owner may have deduction for such failure. This is not the case of a municipality contracting for a public improvement, accepting it, and making payment therefor absolutely, and afterwards itself collecting the assessments; and it is unnecessary to consider whether in that case the property owner could allege defective work as a matter of defense against the tax.

If it be true as alleged by the defendant, that he cannot "be compelled to pay a fraction of a tax imposed on his property, because of a benefit specially conferred," then if the work was substantially performed he is entitled to no deduction for slight defects. He cannot complain that the instructions permitted such deduction. His sixteenth point, namely,

[Pancake v. Cauffman.]

"If the jury find that the pavement, as laid by the contractors, was not done in substantial compliance with the ordinances of councils, either as to depth of gravel, the quality of the gravel, or the size of the stone, their verdict should be for the defendant," ought to have been refused for the reason that evidence was wanting to warrant so finding. All he was entitled to, under the evidence, was a deduction from the contract price, if the jury found defects which lessened the value of the pavement. This, in case of such finding, they were explicitly instructed to make. The abstract proposition in answer to the sixteenth point, and the instruction as to the limit of defence against a municipal claim, were not in the least harmful to the defendant, for they limited recovery to the value of the work, and accorded with the instruction that if the jury were satisfied that the charge was greater than the value, they could allow only what the pavement was worth.

Judgment affirmed.