FLORENCE M. WOOD, ET AL., Appellees, v. JOHN S. HALL, ET AL., Appellants.

**Appeal:** BRIEFS: MOTION TO STRIKE. Briefs and arguments will not ordinarily be stricken because not filed in order, and in the instant case the motion to strike might have been good if directed solely to appellant's reply, or at least time could properly have been granted for appellees to meet the argument: but as the motion was to strike all of appellant's argument it should be overruled.

**Drainage:** MANNER OF RAISING FUNDS: JOINT ACTION OF COUNTIES. The boards of supervisors of counties into which a drainage district extends have the power, acting jointly, to determine how the funds shall be raised to meet the expenses apportioned to each county for constructing the drainage system.

**Same:** REQUIREMENT THAT CONTRACTORS PURCHASE BONDS. The supervisors of two counties have no power, whether acting jointly or severally, to provide that contractors for the construction of a drainage system extending into both counties shall purchase bonds to provide a fund for preliminary expenses and for the rights of way: and such a requirement, manifestly operating to increase the amount of bids and to prevent competition, should not be included in the notice to contractors, or in the contracts; but where a bid was not made with a view to buying bonds for that purpose and the contract made no reference thereto it should not be held invalid.

**Same:** CONTRACTS: PROVISIONS FOR PAYMENT: CONSTRUCTION. A contract for the construction of a drainage system, extending into two counties, that the contractor shall take in payment drainage bonds of the district, should be construed as requiring him to take, not bonds of the district for the issuance of which there is no authority, but such bonds as each county acting independently may lawfully issue; especially where the proceedings of the boards indicate an intention to issue such bonds.

**Same:** ISSUANCE OF BONDS TO CONTRACTORS: INJUNCTION BY TAXPAYERS: ESTOPPEL. Taxpayers who knew that work was progressing under contracts for the construction of a drainage system and that their lands were to be taxed to pay the expense; that an irregularity existed in the making of the contracts to which they failed to make timely objections in the proper manner; and whose lands were to be specially benefited by the improvement, are estopped to question by injunction the validity of the contracts, because of a

mere irregularity in the proposed method of issuing and disposing of bonds to pay the preliminary expenses of the system; where the supervisors have authority to raise funds in that manner when properly exercised.

Same: ESTOPPEL. After a taxpayer has submitted his case involving objections to a tax upon one theory he cannot by amendment to his petition change his grounds of objection.

Same: IRREGULARITY IN CONTRACT: WAIVER. That part of a contract providing for the joint issuance of bonds for the construction of a drainage system extending into both counties is a mere irregularity, which may be rejected and the contract be otherwise enforced.

Same: REJECTION OF BIDS: MODIFICATION OF CONTRACT. The board of supervisors may reject a bid for the construction of a drainage system when the bidder is not responsible, and its action is not reviewable; and it may modify the contract made with the lowest responsible bidder when for the benefit of the property owners, without resubmitting the matter for bids.

Same: INJUNCTION. The discretion of supervisors in letting a contract for the construction of a drainage system will not be interfered with by the courts, where no actual fraud is shown and the evidence on the question of price is conflicting.

Same: APPEAL. Upon an appeal from the action of supervisors in proceedings for the construction of a drainage system there must be the clearest kind of proof that the officers have acted without jurisdiction, or have abused the powers conferred upon them, to justify interference by the courts.

*Appeal from Harrison District Court.*— Hon. N. W. MACY, Judge.

MONDAY, JANUARY 14, 1907.

PETITION FOR REHEARING WITHDRAWN WEDNESDAY, MARCH 27, 1907.*

THIS is a suit in equity against the boards of supervisors and auditors of Harrison and Monona counties, and F. M. Crane, the Canal Construction Company, and the Faris-

[* This and the two succeeding opinions were released for publication too late to appear in chronological order.— EDITOR].

Kesl Construction Company to annul certain contracts for the construction of a drainage improvement in the aforesaid counties made by the respective boards of supervisors with the three last-named parties, and to compel the letting of a contract for the work to W. A. Smith & Co., who, it is claimed, were the lowest bidders therefor. The trial court annulled the contracts, but refused to direct an award of the contracts to W. A. Smith & Co. Defendants appeal.— *Reversed* and *remanded.*

*P. A. Sawyer, A. Kindell, L. W. Fallon* and *S. W. Packard,* for appellants.

*J. S. Dewell, J. W. Anderson, C. A. Bolter* and *Rodefer & Arthur,* for appellees.

DEEMER, J.— We have a motion to strike appellants' brief and arguments from the files, for the reason that appellees had the right to open and close the argument. Defendants and appellants filed an opening brief and argument August 17, 1906, and appellees filed their argument November 10, 1906. Thereafter and on December 8, 1906, appellants filed a reply brief. On December 11, 1906, appellees filed their motion to strike appellants' briefs and arguments for the reasons stated. The cause was submitted with motion on December 11th. We do not ordinarily strike briefs and arguments because not filed in order. Had the motion been directed to appellants' reply brief alone, it might well have been sustained. Or, had appellees asked for time within which to file a reply to appellants' arguments, this might have been granted, but, as the motion is to strike all of appellants' briefs, it must be and it is overruled. *Henning v. Colsch* (Iowa), 106 N. W. 922; *Tantlinger v. Sullivan,* 80 Iowa, 218; *Davis v. Huber,* 119 Iowa, 59.

1. APPEAL: briefs: motion to strike.

The contention that appellants' briefs are not in com-

pliance with our rules is without merit. *McDermot v. Mahoney* (Iowa), 116 N. W. 788.

Coming now to the merits, we find that proceedings were regularly instituted in the year 1904 for the establishment of a drainage district in the adjoining counties of Monona and Harrison, under the provisions of chapter 68 of the Acts of the Thirtieth General Assembly. It is conceded that all proceedings were regular down to the determination as to how the funds should be raised by the respective boards to meet the expenses apportioned to each county. At a joint session of the boards held in May, 1905, it was ordered that the following notice be published as provided by law: " Public notice is hereby given that the joint boards of supervisors of Monona and Harrison counties will receive bids up to twelve o'clock, noon, on Thursday, June 8, 1905, for the construction of the Monona-Harrison ditch, lateral No. 1 and cut-offs, in Little Sioux river in accordance with plans and profiles on file in the office of the auditors of Monona and Harrison counties." [Here follows a complete description of the improvements.] Said notice also contains the following: " The cost of this improvement will be paid with drainage bonds or drainage certificates of said Monona and Harrison counties drainage district No. 1, respectively, issued under the Iowa drainage law for said drainage district, which bonds or certificates will bear six per cent. interest, payable semi-annually from date of issue, and one-tenth of the total amount will mature each year beginning six years from date of issue, the last tenth maturing fifteen years from the date of issue. Each bidder will be required to accept such bonds or certificates at par in payment for the amount of his bid if a contract should be awarded."

On the day fixed in this notice, bids were filed with the boards of supervisors sitting in joint session by W. A. Smith & Co., the Canal Construction Co., Faris-Kesl Company, and F. M. Crane. In each of the bids, save that filed by Crane, there was an offer to take bonds of the drainage district at

par in payment for the work done, and, in the bids of the Canal Construction Company and the Faris-Kesl Construction Company, there was an offer to take at par such an additional amount of bonds as might be necessary to provide for the payment of damages, right of way, and other necessary expenditures in connection with the work done by them respectively. On the 8th day of June, 1905, the boards, in joint session, by unanimous vote awarded contracts to F. M. Crane, the Canal Construction Company, and the Faris-Kesl Construction Company, for the portions of the work let to them respectively, at the rates of eleven, eleven and one-half to thirteen and one-half, and twelve cents per cubic yard for the material to be removed in the cutting of the ditches. The bid of W. A. Smith & Co. was rejected because the boards did·not consider it a responsible bidder. The parties whose bids were accepted immediately ratified the same, and on July 20, 1905, formal contracts were entered into with each of said bidders. By the terms of each of these contracts each contractor was to receive payment for money due thereon in drainage bonds of the said Monona and Harrison counties upon certificates of the engineer as the work progressed. In the contracts with the Canal Construction Company and the Faris-Kesl Construction Company, there was a further provision giving the boards of supervisors the option to require the contractors to take such an amount of legally issued drainage bonds at par as might be required to pay for the necessary rights of way, damages, and other expenses on the work embraced in each respective contract. No such provision is found in the contract with the Crane Company. By the terms of the contracts, the contractors had the option to buy the bonds and to pay for them at par in cash at any time.

It is claimed that, prior to the time the bids were received, it was agreed between the members of the boards and the promoters of the ditch that no bids would be accepted or considered or contracts awarded unless the bidder or con-

tractor undertook to buy a sufficient amount of drainage bonds at par to pay all the preliminary expenses and also the damages for the rights of way for the improvement, and that all prospective bidders were notified of that fact before the bids were filed. It is further claimed that all this was without authority of law and that the effect thereof was to unduly and illegally increase the cost of improvement and that it did increase it to the extent of nearly, if not quite, $100,000. In the proposal submitted by the Canal Construction Company was the following clause: " If rock is found in the dams, classification to be paid for on the basis of sixty cents per cubic yard for hard-pan and loose rock, and $1.00 per cubic yard for solid rock. Any material requiring blasting to be considered as hard-pan." When the boards came to act thereon they made the following resolution: " Resolved, that the contract for the construction of the Monona-Harrison ditch and cut-offs and dams in the Little Sioux river be and the same are hereby awarded to the following parties: Section No. 1 at 11½ cents per cubic yard, and cut-offs 1 to 9, inclusive, and dams 1 to 4, inclusive at 13½ cents per cubic yard, to the Canal Construction Company; provided, however, that the said above-mentioned party will accept said contracts free from any clause or clauses relative to any additional compensation for the removal of rock, hard-pan, or any other substance." The contract as finally drawn complied with this resolution and the construction company waived the provision as to increase of price in the event rock or hard-pan was encountered. It is claimed that this was illegal, amounted to a rejection of the bid and the making of a new contract without submitting the matter to competitive bids. It is also claimed that the provision in the contracts giving the boards power to compel the contractors to take bonds at par to provide for the payment of damages for right of way, etc., was and is illegal, for the reason this was a matter for the county auditor and not the boards. Reliance is placed upon

section 7, chapter 68, Acts Thirtieth General Assembly, which provides that the damages shall be secured or paid upon such terms as the county auditor may deem just and proper.

This action was commenced December 11, 1905, by some of the plaintiffs who were taxpayers within the drainage district, owning land in Monona county, and the allegations in the original petition were to the effect that the proceedings of the boards were illegal and void, because they did not award the contracts to the lowest bidder; because of actual fraud perpetrated by the members of the boards, in that the awards were made behind closed doors; and that certain members of the boards colluded with the parties to whom contracts were awarded to the end that a portion of the money arising out of the contracts should be used in the purchase of a large tract of land lying within the drainage district, which land should be used by the parties to whom the contracts were awarded. They also claimed that no notice was ever served upon them or either of them, or upon one Baker, who was in possession of a part or all of these lands of the pendency of the petition to establish the ditch, the day of hearing, or any of the proceedings relating to the improvement. It was also claimed that the bonds which it was proposed to issue were illegal in that they bore 6 per cent. instead of $4\frac{1}{2}$ per cent. interest, and that this was agreed upon by defendants for the purpose of defrauding the taxpayers and increasing the compensation of the contractors. It was also claimed that the bids were exorbitant, excessive, and unconscionable, and far in excess of the reasonable value of the work. It was also claimed that the law under which defendants were acting is unconstitutional and void. In this petition it was also averred that the several contractors were attempting to do the work under their contracts. One of the parties plaintiff came into the case January 1, 1906. On January 2d of that year defendants filed their answers, which were, in effect, general denials

and pleas of estoppel based upon an appearance by each of plaintiffs before the board of supervisors to object to the report of the commissioners and to the assessment of their lands in which they made and filed certain written objections, which, it is claimed, bound and estopped them from setting up any other in this action. March 9, 1906, various other parties came into the suit as plaintiffs and adopted the allegations of the petition theretofore filed. In an amendment to the answer defendants pleaded an estoppel based upon a large amount of work done by the contractors under their contracts and expenses incurred, and further pleaded a full hearing upon all the objections filed by plaintiffs before the boards of supervisors, an adjudication that none were meritorious, and an appeal by the objectors to the district court of Monona county, where the appeal was then pending. They asked an abatement of this action until that · appeal was determined. The case upon these issues came on for trial April 12, 1906, and at the conclusion of the testimony and after the argument was commenced plaintiffs filed an amendment to their petition in which they made an averment of many of the facts recited above, and made the claims which they now rely upon as grounds for the relief granted them by the trial court. Thereafter defendants filed an answer to this amendment which contained a general denial and this further plea of estoppel: " For further answer, and as a special defense to the matters and things in said amendment contained, defendants allege that the contracts which plaintiffs · are seeking to have enjoined and annulled in said action were executed on the 20th day of July, 1905, and the contractors for the construction of the several improvements in said Monona-Harrison drainage district qualified for the performance of the work awarded them by executing and filing bonds as by law required, immediately upon the execution of said contracts, at great expense, and commenced the construction of dredge boats and machinery for the prosecution of said work, and

a large portion of said work has already been performed;
the total expense of said several contractors, and work done
aggregating upwards of $100,000, as shown by the evidence,
all of which was known to plaintiffs at the time the same
was incurred; and the plaintiffs are now barred and estopped
from asking and demanding the relief prayed for by reason
of the matters and things set out in said amendment."

The trial court, after hearing the arguments, made the
following findings of fact and conclusions of law:

(1) The court finds that there was no irregularity or
illegality in the organization of the joint session of the boards
of supervisors of Monona and Harrison counties. (2) That
there was no lack of jurisdiction for failure to serve notice
on Peter W. Baker, in actual possession as tenant of the
lands of the plaintiffs Bolters and Wood. (3) That there
was no actual fraud or collusion between any member of
the board of supervisors and the successful bidders. (4)
That the joint session of the two boards acted without au-
thority and beyond its power in determining how the funds
should be raised by the respective boards to meet the expenses
apportioned to its share of the work. (5) That the joint
session in receiving and acting upon bids offering to sub-
scribe for a *pro rata* share of bonds for the preliminary and
right of way expenses acted without authority. (6) That
the action referred to in 4 and 5 had the necessary effect
of preventing and limiting fair and reasonable competition,
resulting in favoritism and increased expense for the im-
provement, amounting to a legal frud, without any intent
or purpose of that kind on the part of any member of the
boards of supervisors.

In so far as the findings of fact are concerned, appel-
lants make no serious contention. They do complain of
the conclusions of law, and earnestly insist upon their plea
2. DRAINAGE:          of estoppel, which is not mentioned by the
manner of
raising funds:   trial court. Defendants contend that the
joint action
of counties.     trial court was in error in holding that the
joint session of the two boards of supervisors acted without

authority in determining how the fund should be raised by the respective boards to meet the expenses apportioned to its share of the work. There is some confusion in the law upon this subject, but we are of opinion, after carefully studying it, that boards of supervisors acting jointly had authority to do everything that was done by the defendant boards in this case, save the issuance of improvement certificates, or the sale of bonds to meet the expenses of the improvement. Section 33 of the act in question expressly provides that " the several boards of supervisors acting separately and within their own counties shall proceed to levy and collect the taxes apportioned, . . . and they may issue improvement certificates or may sell bonds for the full amount of the benefits apportioned to each county." The bonds are to be issued by each county severally for the amount of the benefits apportioned to each county, and when so issued the board may devote the same at par to the payment of the work as it progresses. See section 28 of the acts before referred to. The boards had express authority to let the contracts in joint session and to take many other necessary steps. See sections 30, 32, 33, and 34 of the act.

The boards acting jointly or severally had no power to provide that the contractors should purchase bonds to provide for the preliminary expenses, and for the rights of

3. SAME: requirement that contractors purchase bonds.

way and the inclusion of this matter in the bids, which, as to the Canal Company and the Faris-Kesl Company, we think it sufficiently shown, was not only without authority, but manifestly increased the amount of the bids and prevented fair and reasonable competition. The inclusion of this matter in the contracts of these two companies was erroneous and sufficient to avoid these contracts, unless it be for some of the matters to which we shall hereafter call attention. These are the only matters which seem to affect the legality of the contracts which were annulled by the district court. As to

these, however, appellants contend that, as the Crane contract did not impose upon him the obligation of taking bonds to meet preliminary expenses and damages for rights of way, it should not be set aside. It· does not appear that he made·his bid with the idea that he should take any of these bonds, nor does his contract require him to do so.

The only possible reason for setting aside his contract is the provision requiring him to take drainage bonds of Monona and Harrison counties in payment for his work.

4. SAME: contracts: provisions for payment: construction. In one sense this might require him to take joint bonds of the two counties, yet we think the contract might well be performed by the issuance of several bonds of the two counties, each issuing the bonds which, under the law, it might issue for the work done. The law expressly provides that the bonds shall be paid only by a tax assessed, levied, and collected on the lands within the district. In other words, the counties are not liable thereon. They are simply the agents through whom the tax is collected and paid, and as there is no personal liability the stipulation in the contract may be performed through the issuance of several bonds by the counties named. There is no showing that the counties intended in this case to do otherwise. The proceedings of the boards show that the bonds were to be issued in accordance with the provisions of chapter 68, of the Acts of the Thirtieth General Assembly, and the contract must be construed in the light thereof. No good reason is shown for annulling the Crane contract.

As to the other contracts, the defendants vigorously contend that plaintiffs are estopped from questioning them. The only reply made by appellees to this proposition is that

5. SAME: issuance of bonds to contractors: injunction by taxpayers: estoppel. the doctrine does not apply to public corporations such as counties, and that acts of the officers thereof do not bind the public by estoppel. In a general sense this is undoubtedly true. But the estoppel relied upon here is not of a municipal

corporation through its officers, but of private individuals who are attacking certain contracts made by public officers with private individuals. · In such cases there may undoubtedly be an estoppel.

It appears that, after the contracts were let, the contractors proceeded with their work and expended large sums of money in the building of machinery and the excavation of ditches, all with the knowledge of plaintiffs, and that plaintiffs made no tenable objections to the proceedings until they filed their amended petition in April of the year 1906. Prior thereto these plaintiffs had made certain definite and specific objections to the work, none of which were tenable, and defendants proceeded to meet these issues and were not required to meet any others until the amendment was filed after the close of the testimony and after the argument had begun. That the doctrine of estoppel. applies to cases involving works of public improvement is well settled by the authorities. See Elliott, Roads and Streets (1st Ed.) 418–422 *et seq.*, and cases cited; also *Harmon v. City,* 53 Neb. 164 (73 N. W. 673), and cases cited. To constitute such an estoppel it must be shown that the owner knew the improvements were being made. This appears in this case from the allegations of plaintiffs' original petition that they knew the cost thereof was to be paid by a tax upon their property. This also appears from the allegations of the petition that they knew of the infirmity or defect under which the proceedings were had which would render them invalid. This is sufficiently shown in the case now before us. And lastly, that there is some special benefit to the owner's property distinct from that of the general public. Of course, if the proceedings are absolutely void or without jurisdiction, a taxpayer will not be estopped solely upon the grounds of benefits received. *Buckley v. City,* 9 Wash. 253, 269 (37 Pac. 441). But, if not void, the doctrines above announced apply. We have heretofore applied them to cases involving public improvements, and to taxation cases as well.

See *Starr v. City of Burlington*, 45 Iowa, 87; *Robinson v. City*, 50 Iowa, 240; *Patterson v. Baumer*, 43 Iowa, 477; *B., C. R. & M. R. R. v. Stewart*, 39 Iowa, 267; *Lamb v. R. R.*, 39 Iowa, 333; *Johnson v. Kessler*, 76 Iowa, 411.

Plaintiffs did object to the tax, but their objections were embodied in their original petition and in the proceedings before the boards which did not raise the questions presented in their amendment to the petition. This calls for the application of another rule. It is this, when a party gives a reason for his conduct and decision touching anything involved in a controversy he cannot, after litigation has begun, change his ground and put his conduct upon another and different construction. He is not permitted to thus mend his hold. He is estopped from doing it by well-settled principles of law. *Donley v. Porter*, 119 Iowa, 542; *Pepper v. Phila.*, 114 Pa. 96 (6 Atl. 899); *Milling Company v. Ins. Co.*, 127 Iowa, 314, and cases cited; *Brooks v. Laurent*, 98 Fed. 647 (39 C. C. A. 201).

**6. SAME: estoppel.**

The action of the boards which is condemned was neither *malum in se* nor *malum prohibitum*. At most it was a mere irregularity, and, under the doctrine of many authorities, that part of the contract providing for the issuance of joint bonds, if it does provide therefor, may be rejected as unwarranted and unauthorized, and the contract otherwise enforced. See *Hitchcock v. Galveston*, 96 U. S. 341 (24 L. Ed. 659); *Chapman v. Douglass Co.*, 107 U. S. 348 (2 Sup. Ct. 62, 27 L. Ed. 378); *Scofield v. City*, 68 Iowa, 695; *Cedar Rapids Water Co. v. Cedar Rapids*, 118 Iowa, 234. Defendants undoubtedly had power to issue bonds for the purpose of paying the preliminary expenses and for the rights of way, and to sell them to the best advantage. That they should compel the bidders to take these in making their bids was a mere irregularity and did not go to the essence of the contracts; in other words, did not render them void. In such cases it is clear there may be an estoppel. The following

**7. SAME: irregularity in contract: waiver.**

cases from other jurisdictions seem to be closely in point; *Brown v. Merrick Co.,* 18 Neb. 355 (25 N. W. 356); *Kellogg v. Ely,* 15 Ohio St. 64; *Muncey v. Joest,* 74 Ind. 410; *Montgomery v. Wasem,* 116 Ind. 343 (15 N. E. 795, 19 N. E. 184); *Pepper v. City,* 114 Pa. 96 (6 Atl. 899); *Meister v. Birney,* 24 Mich. 435; *Wheeler v. Rice,* 83 Pa. 232.

A sufficient answer to the claim that the boards did not accept the bids of certain contractors but made new contracts with them without resubmitting the matter for bids is answered by these suggestions. The bid of Smith & Co. was rejected because they were were not responsible bidders. This finding cannot be reviewed by the courts. *Inge v. Board of Public Works,* 135 Ala. 187 (33 So. 678, 93 Am. St. Rep. 20); *People v. Kent,* 160 Ill. 655 (43 N. E. 760). This being true and the modification of the contracts being for the benefit of the persons ultimately liable for the expenses of the work there was no need for resubmitting or reletting the contracts. These contractors were the lowest responsible bidders, and the change made by the board in the acceptance of the bid was for the benefit of the property owners and did not amount to the making of new contracts without bids. Many cases might be cited in support of this proposition but it is so fundamental as not to require it.

<span style="float:left">8. Same: rejection of bids: modification of contract.</span>

There was no actual fraud upon the part of any of the defendants. In what they did they acted according to their best judgments, and, if there be any fraud, it is a legal one only. In such cases it requires a very strong showing to justify a court in interfering. There is some testimony that the work was let for an extravagant price, while, on the other hand, experts gave it as their opinion that it was not unreasonable. In view of this conflict and of the discretion lodged in the boards, we are not justified in interfering because the contracts were imprudently made. *City v. Terra Haute Co.,* 94 Ind. 305;

<span style="float:left">9. Same: injunction.</span>

*Pepper v. City,* 114 Pa. 96 (6 Atl. 899) ; *People v. Stephens,* 71 N. Y. 527.

It appears that plaintiff's have an appeal pending from the action of the boards. Whether or not upon that appeal the questions we are now considering may be taken advantage of,

10. SAME: appeal.

we do not now determine. Many questions may be considered upon an appeal which cannot be raised in an injunction proceeding such as this. In all such cases there must be the clearest kind of proof that the public officers have acted without jurisdiction or abused the powers conferred upon them. See cases hitherto cited. Upon appeal, the question of laches and estoppel is not necessarily involved, and, of course, does not arise from the mere fact that work has been done under the contracts.

We are constrained to hold that the trial court was in error in annulling the contracts, and its decree must be, and it is, reversed, and the cause will be remanded for one in harmony with this opinion.— *Reversed* and *remanded.*