PATRICK NASH *vs.* CITY OF ST. PAUL.

July 12, 1876.

**City of St. Paul—Engineer's Estimate not a Part of the Plans and Specifications for a Local Improvement.**—The estimate required by ? 5 of the act of March 6, 1871, entitled "An act to authorize the city of St. Paul to levy assessments for local improvements," as amended by the act of February 29, 1872, although such estimate stated the estimated amount of each kind of excavation to be done in the improvement, and although filed with the plans, profile, and specifications for the work in the office of the clerk of the board of public works, was not a part of the plans and specifications to be prepared for the improvement. It did not control the amount of work to be done, and no bidder had a right to rely upon it, except at his own risk, in making his bid.

**Same—Board of Public Works Cannot Contract that such Estimate shall be Conclusive as to Amount or Kind of Work to be Done under the Contract.**—Sections 27 and 28 of the act of 1871, as amended in 1872, authorized an advertisement for bids to do the work, and the making of a contract with the lowest responsible bidder complying with the requirements of the act to do the work called for by the plan, profile, and specifications on file in the office of the clerk of the board of public works; but there was no authority in any officer to make, on such a bidding, a contract that the estimate should govern as to the amount or quality of the work to be done.

**Same—Board can Order a Change in a Local Improvement only by Resolution.**—The authority conferred by ? 1, of the act of February 21, 1873, amending the acts of March 6, 1871, and February 29, 1872, upon the common council, or board of public works, to order a change or modification in a local improvement because of unforeseen obstacles, could be exercised only by formal resolution.

**Same—Where no Change is Ordered, Contract Price Cannot be Increased.**—No authority was given to either the council or board, where no modification or change in the improvement was made, to make or stipulate for any increase in the contract price.

Appeal by plaintiff from an order of the court of common pleas of Ramsey county, *Simons*, J., presiding, sustaining a demurrer to the complaint.

*Gilman, Clough & Lane,* for appellant.

*I. V. D. Heard,* for respondent.

GILFILLAN, C. J. This action is to recover for extra work alleged to have been done by the plaintiff in grading and bridging Hoffman avenue, in excess of what was called for by his contract to grade and bridge the same, and comes here on an appeal from an order sustaining a demurrer to the complaint.

The contract, as alleged in the complaint, was that plaintiff should grade and bridge Hoffman avenue, between points specified, according to the plans, profile, and specifications thereof on file in the office of the clerk of the board of public works, for the gross price of $12,000. The complaint sets out that, prior to advertising for bids, the defendant determined upon the grading and bridging, and caused to be prepared by the city engineer certain plans, profile, and specifications, and estimate of the work to be done in the making of said improvement, which were duly filed in the office of the clerk of the board of public works. It does not allege that the plans or specifications proper stated or showed the amount of any kind of excavation, either of earth or of rock; but it states " that said plans, profile, and specifications so on file for the inspection of bidders under said advertisement, and other persons interested, consisted in part of a certain report and estimate of said city engineer," etc., and " that said report and estimate was deposited and filed in said office, on May 29, 1873, as a part of the specifications for said grading and bridging," etc. ; and that plaintiff, " relying on said estimate and report of said engineer, so made and filed as a part of said specification, as showing accurately the amount and character of the work to be done in said grading and bridging," bid to do the work at $12,000, which, being the

lowest bid, was accepted, and the contract to do the work executed upon it. The complaint alleges that, when plaintiff came to do the work, he found that the rock excavation necessary to do the work, according to the profile, plans, and specifications proper, was largely in excess of the estimate of rock excavation in the engineer's estimate on file. The complaint then contains allegations intended to show that, upon discovering this excess, he claimed that it was unforeseen extra work; that his claim was allowed by the council and board of public works, who directed him to go on and do it, with the understanding that he should be paid for it as unforeseen extra work.

Whether the estimate of the engineer limited the amount of rock excavation which plaintiff was to do under his contract, is an important question in the case. The specifications for such work may undoubtedly be so drawn as to require only a specified amount of each kind of excavation, even though doing such amount of each may not bring the improvements to the condition intended. In this case, had the specifications themselves specified the amount of rock excavation required, or had they referred to the estimate for that purpose, the complaint ought to, and naturally would, have distinctly stated the fact. The careful avoidance of such a specific allegation (when it was the easiest and most obvious way of pleading it) shows that it was not the fact, and that the only ground upon which the assumption is made in the complaint, that the estimate was a part of the specifications, is that it was filed in the same office with the plans, profile, and specifications. That fact does not make it a part of the plans and specifications. The only provision for an estimate in such cases, in the acts controlling the council and board of public works in the matter of local improvements, was in section 5 of the act of March 6, 1871, (Sp. Laws 1871, c. 32,) as amended by the act of February 29, 1872. Sp. Laws 1872, c. 2, § 4. This was an estimate of the expense of any proposed local improve-

ment, to be furnished by the board to the council, to enable the latter to determine whether the improvement should be made. It was not intended for any other purpose, and, when prepared, it was precisely what its name imported, to wit, an approximate judgment or opinion upon the matters of which it treated. No bidder had a right to rely upon it except at his own risk. It was not made for his use. In fixing the amount that he should bid, he must rely upon his own examination and judgment; and, unless the specifications referred to the estimate as showing the amount of each kind of work required to be done, it had nothing whatever to do with his contract.

After alleging the execution of the contract to do the work according to the plans, profile, and specifications on file in the office of the clerk of the board of public works, the complaint goes on to state, " and it was then and there understood by and between the parties thereto that the said estimate of the said engineer was a part of said specifications, and limited the amount of work, and the quality thereof, to the quantity and quality shown thereby, and that no more should be required, under the terms of said contract, than as therein, and by said plans and profile, indicated."

As we have seen, the estimate was no part of the plans and specifications on file, and upon which the bids were made. From this last-quoted part of the complaint it does not clearly appear whether the alleged understanding as to the estimate was inserted in the main contract, or in a collateral one made at the same time. It is indifferent which was the case; for, in either case, there was no authority to make it. In making and enforcing contracts for public improvements, neither the council nor the board stands in the same position as a private individual does in respect to his own business. They are agents of the public. The cases in which they have authority to act, and the manner in which they must exercise their powers, are strictly limited

and defined. Unless they act within the cases and in the manner laid down in the charter, no cause of action against the city can accrue from their acts, and their duty is precisely commensurate with their powers. Having made a valid contract on behalf of the city, it is their duty to enforce it.

Section 27 of the act of March 6, 1871, (Sp. Laws 1871, c. 32,) as amended by the act of February 29, 1872, (Sp. Laws 1872, c. 2, § 17,) provided that, "whenever any public improvement shall be ordered, for which an assessment is to be made, as aforesaid, the said board of public works shall cause proposals for doing said work to be advertised for in the official paper of said city; a plan and profile of the work to be done, accompanied with specifications for the doing of the same, being first deposited with the clerk of said board, to be kept by him at all times open for public inspection," etc. Section 28, as amended by the act of 1872, (§ 18,) provided that "all contracts shall be let to the lowest reliable and responsible bidder or bidders who shall have complied with the above requisition," etc. The result of these provisions was that bids were to be advertised for to do the work required to be done, by the plan, profile, and specifications on file, and, when the bids were received, the contract to do that work should be let to the lowest responsible bidder. This mode of contracting by the public agents was prescribed for the purpose of protecting the city and the property owners. If the board could advertise for bids to do the work according to the plan, profile, and specifications, and, upon the acceptance of the lowest bid, could then contract to do work materially different, the provision of the statute would be effectually evaded, and the intended protection rendered entirely nugatory. There was no such authority. The authority of the board was to make with plaintiff a contract to do the work which he bid for—that is, the work according to the plan, profile, and specifications—for the price

which he bid. If, as alleged in the complaint, there was an agreement that the plan and specifications should not, but that the estimate should, control the amount or character of the work to be done, it was void.

The plaintiff relies, mainly, for the authority of the council and board of public works to agree to pay him for excavating the rock in excess of the amount stated in the engineer's estimate, upon that part of § 1 of the act of February 21, 1873, amending the acts of 1871 and 1872, which is in these words: "If the board of public works or the common council, in carrying out the provisions of this act, should find unforeseen obstacles in grading, excavating, filling, paving, or in any case of improving, or opening, or widening streets or public highways, not provided for, they or either of them may, by resolution, order such change or modification in such improvements as they or either of them may deem just and equitable, at any time before or after the confirmation of any assessment, or before or after the letting of any contract to do the same. Sp. Laws 1873, *c*. 39, §1.

What would be a case of "unforeseen obstacles" to justify the exercise of this power, is a question not presented by the facts of this case; for, by the express terms of the act, the power must be exercised by resolution ordering the change or modification. It is not left by the act to be inferred or gathered from the acts of the council or board, but must be express and by formal resolution. The complaint shows no such resolution. Those set out in the complaint are mere resolutions of enquiry, which would naturally precede, but do not amount to a resolution ordering, any change. Moreover, the complaint does not pretend that there was any change or modification of the improvement, but shows that it was carried on and completed precisely as at first intended. The only change claimed was in the price to be paid for doing the work under the contract, and not in the improvement. There is no

authority given to the board or council to pay, or to agree to pay, a contractor on a local improvement, for doing the work required by his contract, a mill beyond the price stipulated in the contract. If a change or modification should be made, to avoid unforeseen obstacles, in the improvement itself, it would follow that, as incident to the change, a corresponding change might be made in the price. That is not this case. The plaintiff, by his contract, agreed to do the grading and bridging, according to the profile, plans, and specifications, for the price stated in his contract. He has done such grading and bridging just as in his contract he agreed to do it, and nothing more. That he found more rock excavation than he calculated upon, that the work proved more difficult and expensive than he had anticipated, did not affect his obligations to perform his contract. *Stees* v. *Leonard*, 20 Minn. 494. The payment of anything in excess of the contract price for doing just what the contract required him to do would be a gratuity. There is no authority in the board or council to make such gratuities. If the plaintiff refused to perform his contract, it was their duty to compel its performance and enforce its obligations. The complaint shows no cause of action against the city.

Order affirmed.