DAVID M. SIMPSON, Appellant, v. BOARD OF SUPERVISORS OF KOSSUTH COUNTY et al., Appellees.

DRAINS: Establishment—Objections of Landowner.   In a drainage
1   district where already three fourths of the work of dredging has been done at a large expense, and arrest of its operation a mile above the outlet would deprive the district of drainage, for which it has paid, and voluntarily assumed the burden, relief will be granted to a landowner, asking that its progress be stopped, only upon a clear and satisfactory showing of his right to demand it.

DRAINS: Establishment—Appeal—Scope of Inquiry.   Principle rec-
2   ognized that the Supreme Court will consider no objections to the order of the board of supervisors in establishing a public drainage improvement, except such as were raised before the board.

EMINENT DOMAIN: Proceedings to Take—Additional Right of
3   Way for Drainage Ditch—Notice.   A landowner notified as to the taking of land for additional right of way for drainage district cannot complain that other persons whose lands were also taken were not properly notified.

DRAINS: Right of Way—Enlargement—Slight Change in Location—
4   Not New Improvement.   A slight change in the location of a ditch and enlargement of ditch right of way, wholly upon land of a single owner, who consented thereto and waived any claim for damages, does not constitute a new and independent enterprise.

DRAINS: Change in Outlet—Remoteness of Prospective Litigation.
5   Possibilities that change in place of outlet of drainage district might give rise to expensive litigation and claims of owners out of the district, there being nothing in the record indicating that damage would result to the property of any person that would not result under the original plan, are too remote to affect the validity of the action of the board of supervisors in making the change.

DRAINS: Modification in Plan—Eliminating Bends in Stream. A modified plan of a drainage ditch, providing for cutting off the bends in the river, instead of emptying into stream at top of bend, and for securing increased fall and efficiency by conducting the current of the stream across the neck of land, held to be a mere incident of the drainage system, and not to invalidate the action of the board of supervisors.

DRAINS: Objections to Establishment—Greater Cost than Original Estimates. That changes were made by the board of supervisors, there being no showing that cost of drainage district would be increased thereby, and that expense on the ditch, when only partially completed, exceeds the entire original estimated cost, constitute no reason for denying power of board to complete the improvement.

APPEAL AND ERROR: Decisions Reviewable—Pointing Out Provision Violated. To entitle one to a review in the Supreme Court of the question of the constitutionality of a statute or of proceedings, the objections must point out the section or the provisions of the Constitution which it is claimed have been violated.

*Appeal from Kossuth District Court.*—N. J. LEE, Judge.

MARCH 18, 1919.

REHEARING DENIED JULY 7, 1919.

BY the joint action of the board of supervisors of the counties of Emmet and Kossuth, there was established a drainage district known as "Joint Drainage District No. 2."

The main ditch thus provided for was constructed from its upper or northern terminal in a southeasterly direction into the land of the plaintiff, and within about a mile of the outlet, when question arose as to the proper width of the right of way which had been acquired by the district, and work was then suspended, pending litigation thus occasioned. That question was finally settled by the decision of this court that the right of way was limited to a width of 85 feet. *Simpson v. Board of Supervisors,* 180 Iowa 1330. Thereafter, it being found or claimed that, beginning near

the north line of plaintiff's land, and thence to the outlet, it was impracticable to make the proper excavation and leave sufficient room for the berm and spoil banks on either side within the limit of 85 feet, proceedings were had by the board of supervisors and county engineer to increase the right of way for the unfinished portion of the ditch to 130 feet. The engineer made written report to the board that such increase was a necessary prerequisite to the completion of the improvement. He also recommended that, where the line of the main ditch, as originally planned, after leaving the plaintiff's land, bore southeast diagonally through land owned by Murtagh & Schumacher, and thence to an outlet in the Des Moines River, it should be so changed as to run directly south on or near the west line of the last-mentioned land, and thence into the river at a point slightly above the outlet originally contemplated, such change not to involve any increased expense to the district. This proposed modification in the line of the ditch was, in that part of its course, below the land of the plaintiff, and is not shown to affect its operation, or the drainage thereby afforded, to his prejudice. Notice of the proposed enlargement of the right of way and modification of the course of the ditch was served upon the plaintiff and all other owners of lands to be taken for that purpose. On the hearing before the board, plaintiff appeared, and made written objections on the following grounds:

(1) That the engineer employed was disqualified to act "because he has relatives who own land within the contemplated improvement."

(2) That the engineer "made no return to county auditors of both Emmet County and Kossuth County, with any plat or profile showing the land to be appropriated."

(3) That notice of this supplementary proceeding was not served on all the landowners in said Joint Drainage District No. 2.

(4)   That these changes from the original plan of the improvement constituted a new and independent improvement, and there is no petition or bond filed therefor, and the board acquired no jurisdiction to act in the premises.

(5)   That the cost of the improvement constitutes a greater burden than ought to be borne by the land to be thereby benefited.

(6)   That there is no necessity for the proposed changes, there being sufficient drainage without it, and because the change is made to allow the use of a particular dredge of a type or kind larger than is reasonably required to complete the ditch according to the original plan.

The board overruled the objections so made, and approved the report of the engineer; and thereafter, damages were awarded to the plaintiff and others for land taken by the additional right of way.

Plaintiff excepted to the overruling of his objection to said proceedings, and, upon trial of such appeal to the district court, a decree was entered, sustaining and affirming the action taken by the board. From this decree, plaintiff again appeals.—*Affirmed.*

*P. A. Bronson,* and *George H. Mayne,* for appellant.

*Quarton & Quarton, Morse & Kennedy,* and *Harrington & Dickinson,* for appellees.

WEAVER, J.—A reading of the essential facts, which are the subject of little or no dispute, amply demonstrates the lack of essential merit in the plaintiff's appeal. There is no attack made upon the regularity or validity of the original proceedings by which the district was established.

Incidentally, it appears that the district is a large one, including parts of two counties; that about three fourths of the work of the dredging has been completed, at a large

expense to the district, and as the dredge worked from the upper terminal of the ditch toward the outlet, the arrest of its operation a mile or more from the outlet naturally serves, in a large degree, to deprive the district of the drainage for which it has paid.

**1. DRAINS: establishment: objections of landowner.**

Under such circumstances, it is but just to say to the individual landowner who asks the court to aid him in the stopping of the progress of an important enterprise which the law recognizes as being calculated to promote the public good, and the burden of which the entire district has voluntarily assumed, that such relief will be granted him only upon a clear and satisfactory showing of his right to demand it. Such showing is here obviously lacking.

As is quite usual in cases of this class, counsel for the appellant overlooked the rule that this court will consider no objections to the order of the board of supervisors except such as were raised by the appellant before the board itself, and have argued some propositions upon which we cannot undertake to pass. Confining our discussions to the questions properly before us, they are as follows:

**2. DRAINS: establishment: appeal: scope of inquiry.**

I. The objection is made in various forms that the order for obtaining or condemning an additional width of a right of way is without authority and void, because notice of such action was not given to all the landowners within the drainage district.

The enlargement of the right of way and the modification of the course of the ditch involved the taking of no land except from tracts owned by the plaintiff, by Luding and Studer, and by Murtagh and Schumacher. Each of these persons were, in fact, notified, and appeared in the proceedings, and, upon overruling of the plaintiff's objec-

**3. EMINENT DOMAIN: proceedings to take: additional right of way for drainage ditch: notice.**

tions, his damages were appraised and allowed. The adequacy of the allowance is not questioned, and it must be assumed that the amount so awarded him is fairly compensatory. The statutory proceeding for assessing his damages is due process of law, and we can conceive no good reason why the result so reached should be avoided because some other person or persons, neither having nor claiming any right or interest in his property, were given no notice of it. If a board of supervisors attempts to condemn a highway across a half dozen separately owned town lots, each owner may be entitled to notice in some form, before his land is taken from him; but if he is properly notified, he cannot resist the condemnation on the plea that one or more of the other owners, similarly affected, have not received like notice. Other owners may be disposed to waive the objection on their part, or the party seeking the condemnation may cure the defect by any other means known to the law; but, however that may be, the objection, if any may be raised by persons not notified, is not available to him who is. If it be true, as counsel seems to think, that the proceedings to which the appellant objects may result in some increase in the taxes against the land of the district, and that notice is, therefore, necessary to their validity, then the utmost effect of the failure to notify would be the invalidation of the tax as against those property owners whose rights have thus been disregarded. But no such question can arise in this case. No landowner or taxpayer is here pleading any want of notice to him, and what his rights may be if he does some time make that objection is an inquiry answer to which can be postponed until he asks it.

It is also to be said that the engineer's report recommending the order to which the appellant objects, is to the effect that the changes and modifications therein proposed will add nothing to the cost or expense of the ditch as originally designed. This conclusion has substantial support in

the facts and figures, so far as they are revealed in the record; or, to say the very least, their substantial correctness is not clearly impeached or disproved. The objection to the decree below, based on the failure to serve proper notice of the proceeding complained of, is not well taken.

II. Of the same nature is the objection that the proceeding is for a new or independent improvement, distinct from the one contemplated in the establishment of the joint district. This view is so clearly erroneous

4. DRAINS: right of way: enlargement: slight change in location: not new improvement.

that the error is apparent upon its mere mention. It is perhaps humanly impossible to prepare and carry out a plan for a work of this character and magnitude with such comprehensive foresight or perfect skill that, at some point in its execution, some modification or readjustment of a mere matter of detail does not become necessary; and, while sound public policy will demand that officers and contractors to whom its authorization and performance are committed shall keep within the limits which the law imposes upon them, the rules which govern their conduct are not to be so unreasonably construed as to defeat the very purpose which the law is intended to serve. If, for example, in the case at bar it was found, when the work of excavating the ditch was largely done, that a right of way of more than 85 feet for the remaining distance was necessary to its completion, it would disclose a very grave defect in the law if the proceedings for the removal of this obstacle were necessarily to be treated as an original proceeding for the establishment of an individual drainage district. There is no express provision of the statute to this effect, and there is nothing in the proved facts of this case to suggest its propriety.

The enlargement of the right of way is, at most, a matter of detail in the construction of the ditch authorized in the original establishment of the district, while the modifi-

cation in the course of the ditch across the Murtagh-Schumacher quarter section of land is, in no sense, a new or independent enterprise.

This slight change in location is wholly within the district as originally established, and wholly upon the land of a single owner, who not only consents thereto, but voluntarily waives his right to the damages assessed in his favor because of the original location. It is not shown to affect or interfere with the drainage of the plaintiff's land in the slightest degree, or to increase the burden which his land must bear.

The counsel argues the possibility that the change in the place of outlet may give rise to drainage claims by owners of the land outside of the district, and to possibilities of expensive litigation; but there is nothing in this record to indicate that the proceedings of which the appellant complains do, in fact, work injury to the property of any person which would not result from the completion of the work according to the original plan; and the mere possibility that claims of that character may be presented is entirely too remote to affect the validity of the action of the board.

5. DRAINS: change in outlet: remoteness of prospective litigation.

In this connection we may also mention the objection that, while the original plan contemplated an outlet into the Des Moines River, the modified plan provides for the straightening of the bend in the river. The several points in evidence show some confusion as to the situation in this respect. but, as we understand the record, it may be stated as follows: The Des Moines River approaches the west line of the Murtagh-Schumacher land and drainage ditch from the northwest, and then loops back in a sharp curve or bend to the west a considerable distance. and then, by another sharp bend, comes back to a point

6. DRAINS: modification in plan: eliminating bends in stream.

south and a little east of the first-mentioned loop, where it makes still another turn to the south, and thence flows under a bridge, by which it is there spanned.

The engineer's report adopted by the board provides that the ditch coming from the north shall make a clear connection with the river at the upper or first loop above mentioned; thence onward to the east of south, across a narrow neck of land, to a second connection with the river, where the channel comes back from its westward course and turns south, 250 feet north of the bridge, making this part of the ditch of sufficient capacity to accommodate the flow from the river, as well as from the ditch.

The following cut will illustrate the conditions that we have tried to describe:

These bends and loops, left in their natural condition, would, of necessity, serve to check the flow of the stream, and to a material extent set back or check the discharge of water from the ditch, if it were made to depend upon the

connection at the upper bend; but, by carrying the ditch onward across the neck of land a distance of perhaps 400 feet, to a connection with the stream at the lower bend, the obstruction mentioned was avoided, and an increased fall obtained, all of which manifestly tends to increase the efficiency of the drainage system.

Moreover, the terminal of the ditch at the lower loop of the river seems to be in substantial accord with the order of the board as made in the original establishment of the district in 1914, though reached by a somewhat different route.

The fact that the effect of this construction may operate to eliminate the bend in the main channel of the river by conducting the current across the neck of land is, at most, a mere incident to the drainage of the joint district, and cannot invalidate the action of the board.

III.  Recurring again to the six objections presented to the board against the order appealed from, it may be said that the first and second are without any support in the record.  The third and fourth, based upon alleged want of notice, petition, and bond, we have already examined, and found not to be well taken.  The same may also be said with reference to the fifth objection, as to the alleged excessive cost of the improvement.  There is no showing that the cost of the improvement will be materially or substantially increased by the order from which the plaintiff appeals.  The fact, if it be a fact, as plaintiff claims, that the expense already incurred in constructing the ditch equals or exceeds the original estimate, constitutes no reason for denying the board power to proceed to a completion of the improvement.  It is no unusual thing for the estimates of the cost of a public work to prove inadequate; but, generally speaking, this does not justify an abandon-

7. DRAINS: objections to establishment: greater cost than original estimates.

ment of the work and the subsequent waste and loss of the investment already made.

The sixth and last objection, that the increase in the width of the right of way was made, not because the success of the drainage system required it, but to enable the contractor to use a dredge larger than was necessary for the work, is also without support in the evidence. There is testimony of a witness that the dredge employed in excavating the ditch to the point where work was suspended by litigation was too wide or too large to be carried through the lower terminal and make a ditch of the prescribed width of bottom and slope of bank,—a fact which, of itself, has no tendency to sustain the objection.

It is true that appellant has, in a general way, objected that the proceedings before the board were unconstitutional, and that the statute which authorizes them is also unconstitutional and void. It is a settled rule

8. APPEAL AND ERROR: decisions reviewable: pointing out provision violated.

that, to be considered by this court, an objection to the constitutionality of a proceeding or statute must point out or specifically designate the section or provision of the Constitution which is claimed to have been violated. Nothing of the kind appears in this record, and the sweeping declaration that the proceedings and orders of the board are unconstitutional is an objection that we cannot entertain. We may add, however, that there is very little of the drainage statute which has not already been subjected to attack upon constitutional grounds, and thus far, as it now stands, it has been held valid.

No good reason has been presented for further interference with the completion of the work for which this drainage district was created. It has been held in abeyance for several years. The property owners who have paid their money for the improvement are entitled to enjoy the benefit to be derived therefrom. There is a point beyond which

opposition for the mere sake of opposition should cease, and the spirit of contentiousness give place to the spirit of peace and good fellowship. We suggest that, in this case, the time has arrived for an armistice, if not a treaty of peace.

There is no good reason shown for reversing the decree of the trial court, and it is, therefore,—*Affirmed.*

Ladd, C. J., Gaynor and Stevens, JJ., concur.