J. W. MILLER et al., Appellants, v. CITY OF GLENWOOD et al., Appellees.

L. W. LAMBERT, Appellant, v. CITY OF GLENWOOD et al., Appellees.

MUNICIPAL CORPORATIONS: Limitation on Debt—"Value of 1 Taxable Property." The constitutional limitation on the right of a city to become indebted is 5 per cent on the actual value of all the property, both real and personal, returned by the assessor for taxation purposes, and not 5 per cent on the one-fourth part of such value on which the levies are computed. (Sec. 3, Art. 11, Iowa Const.)

MUNICIPAL CORPORATIONS: Special Charter Cities—Limitation 2 on Debt. The only limitation on the right of a special charter city to become indebted is the 5 per cent limitation provided in Sec. 3 of Art. 11 of the Constitution.

MUNICIPAL CORPORATIONS: Limitation on Debt—Cash on 3 Hand. Outstanding bonds and warrants should be reduced by the amount of available cash on hand, in determining the debt of a city as a basis for applying the constitutional or statutory limitations on indebtedness.

MUNICIPAL CORPORATIONS: Public Improvements—Assessment 4 Proceedings. Proceedings of a special charter city in re pavement of streets reviewed, and held conformable to statutes, Secs. 965, 971, Code Supp., 1913.

MUNICIPAL CORPORATIONS: Public Improvements—Notice— 5 Publication in Special Charter City. Publication of notice of proposal to establish a paving improvement in a special charter city need be published for the required time in but one newspaper. Sec. 823, Code Supp., 1913, requiring publication in two newspapers, pertains only to non-special-charter cities.

MUNICIPAL CORPORATIONS: Public Improvements—Contract 6 Price Exceeding Estimate. The aggregate contract price for paving may, in the absence of fraud, exceed the engineer's preliminary estimate of cost.

*Appeal from Mills District Court.*—SHELBY CULLISON,
Judge.

FEBRUARY 18, 1920.

ACTION to enjoin the city from carrying out a contract
for street paving, on the ground that the city had no juris-
diction, and that, by its act, an indebtedness was created
in excess of the statutory limitation. The district court
dismissed plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*W. S. Lewis* and *J. J. Hess,* for appellants.

*Genung & Genung, C. E. Herring,* and *Otha S. Thomas,*
for appellees.

GAYNOR, J.—These cases were consolidated and tried
together, and are presented here on the same record. The
actions are in equity, and are brought by property owners
to enjoin the city council and the officers of
the city, and the city itself, from proceed-
ing under a contract for street paving; and
the prayer is that the contract be declared
null and void, and that the city and its officers be enjoined
from attempting to assess the costs of proposed paving
against the property of the plaintiffs, or any of them, or
against the city. The cause was tried, and a decree ren-
dered for the defendants, and plaintiffs' petition was dis-
missed. The plaintiffs in each case appeal.

1. MUNICIPAL
CORPORATIONS:
limitation on
debt: "value
of taxable
property."

The first contention is that, if the contract is permitted
to stand, an indebtedness will be created, for which the city
is liable, in excess of the constitutional limitation. This
calls for first consideration.

It was stipulated on the trial that the total assessed
value of all property within the corporate limits of the
city of Glenwood is $1,326,572; that in this is included
moneys and credits of the assessed value of $405,180, and

all other property, of the assessed value of $921,392. It was further stipulated that, on the 1st of July, 1917, when the contract was let, the city was indebted on bonds outstanding, to the amount of $51,000, and on registered warrants, to the amount of $4,336.01, making a total indebtedness at that time of $55,336.01, against which it had on hand cash, to the amount of $3,358.81, leaving a balance unprovided for of $51,977.20; that, on the 3d day of January, 1918, at the time the work was accepted, there were outstanding bonds to the amount of $55,000, and registered warrants to the amount of $3,867.60, making a total outstanding indebtedness at that time of $58,867.60, against which it had on hand cash to the amount of $2,876.45, leaving a balance of outstanding indebtedness, unprovided for, of $55,991.15.

It was further stipulated that, after assessing against abutting property its full share of the burden, there would still remain an indebtedness, for which the city would be liable, of $6,185. Thus it appears that, on July 1, 1917, the total indebtedness of the city, after deducting the moneys on hand to meet said indebtedness, remained at $51,977.20; that, if the contract is carried out, there will be an additional indebtedness created of $6,185. Adding this to the outstanding indebtedness would make the total indebtedness of the city on that day, $58,162.20. The total outstanding indebtedness of the city on January 3, 1918, was $58,-867.60. Deducting from this the amount of cash on hand to meet said indebtedness, there still remained an outstanding indebtedness of $55,991.15. Adding the contemplated indebtedness to this would make the total indebtedness on January 3, 1918, $62,176.15.

Article 11, Section 3, of the Constitution of Iowa provides:

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, for any purpose, to an amount in the aggregate, exceeding five per

centum on the *value of the taxable property* within such county or corporation, to be ascertained by the last state and county *tax lists*, previous to the incurring of such indebtedness."

Glenwood is a city acting under special charter, and the only constitutional limit upon its right to incur indebtedness is five per centum on the *value* of the *taxable property* within its limits. Assuming that the as-

2. MUNICIPAL COR-PORATIONS : special charter cities: limitation on debt.

sessed value is the value of the taxable property within its limits, we find five per centum of the total assessed valuation to be $66,328.60. So, on the assumption that the assessed value is the value of the taxable property, it cannot be said that the indebtedness, at either of the times hereinbefore referred to, exceeded the constitutional limitation. There is no showing of the value of the taxable property within the corporate limits of defendant city, except as found in this stipulation; and, we take it, this stipulation as to the total assessed valuation was based on the last state and county tax list made previous to the happening of the matters herein complained of; and we assume that the tax list shows the final total assessed valuation of the taxable property.

The city of Glenwood, as a city acting under special charter, is governed in matters such as here under consideration, by those provisions of the statute which relate to and control public improvements within cities under special charter. Turning to Chapter 14, Title V, of the Code of 1897, which has to do with cities under special charter, Section 933 of said chapter provides:

"The provisions of this chapter shall apply only to cities acting under special charter, and no provisions of this Code, nor laws hereafter enacted, relating to the powers, duties, liabilities or obligations of cities or towns, shall in any manner affect, or be construed to affect, cities while acting

under special charter, unless the same have special reference or are made applicable to such cities."

The only limitation, therefore, on the power of a city acting under special charter to create indebtedness is the constitutional limit of five per centum upon the *value* of all *taxable property* within its jurisdiction. Section 48 of the Code of 1897, Subdivision 10, provides that the word "property" includes personal and real property. It follows, therefore, that, when this constitutional provision says that a city cannot become indebted in any manner, for any purpose, to an amount in the aggregate exceeding five per centum of the value of the taxable property, it included in the words "taxable property" both real and personal property, subject to taxation within the city.

It will be noted that, in computing the city's indebtedness at the time the acts herein complained of were done, we deducted from the amount of outstanding bonds and

3. MUNICIPAL CORPORATIONS: limitation on debt: cash on hand.

warrants the cash on hand available to meet these obligations. As authority for so doing, we call attention to *Dively v. City of Cedar Falls*, 27 Iowa 227, in which it is said:

"Testimony was introduced to show the aggregate of the tax lists within the corporation for the years 1857 and 1858, that five per centum of either would fall below the amount of scrip issued. But, this conceded, the question actually arising is scarcely touched. There is no particle of testimony warranting the conclusion that, when the *scrip now in suit was issued,* the town was 'indebted in any manner' in another cent. Indeed, we do not know but that there was money in the treasury to pay this $100, and more than this. If a municipal corporation has the money in its treasury to meet its indebtedness, the issue of warrants to the amount of $20,000, or any other sum, however great, over five per cent of its taxable property, would not be a violation of the Constitution. In such a case, it would not

'become indebted,' within the meaning of the clause under consideration."

It is true that some of the things said in this case are said to be dictum, in *Windsor v. City of Des Moines,* 110 Iowa 175, 188, but the matter herein set out is not even criticized. This case was referred to and approved in *Phillips v. Reed,* 107 Iowa 331, in which we find this language:

"If it appeared that the indebtedness, to the payment of which the satisfaction of plaintiff's warrant is sought to be postponed, was incurred in excess of the prescribed limit, and in violation of the inhibition of Section 3 of Article 11 of the Constitution, the decision of this case will be a matter of no difficulty. It is true, the petition alleges that, at the times when this indebtedness was contracted, the city was in debt to the limit of the amount allowed. But it does not follow from this that the indebtedness as represented by these warrants was necessarily invalid. If the city had on hand or in prospect, at the time these warrants were issued, funds with which to meet them, without trenching upon the rights of creditors for current expenses of the city, then the warrants were valid, although such funds may have been thereafter wrongfully applied to other purposes."

The right to deduct moneys on hand from the total indebtedness appearing, was recognized also in *Rowley v. Clarke,* 162 Iowa 732.

It will be noted, and we think the words were used advisedly, that the constitutional limit of taxation is measured by the value of the taxable property within the city, and, by the same provisions, the value of the taxable property is ascertained by reference to the tax list. The tax list is presumed to show the final assessed value of all taxable property within the city. The limitation on indebtedness is five per centum of the *value* of the taxable property, and this *value* is determined by the last tax list, the tax list previous to the incurring of the indebtedness.

Some reference is made by appellants to the provisions of Section 1322-3a of the Supplement to the Code, 1913, made applicable by its terms to cities under special charter; but we see no relevancy in this reference to the matters here under consideration. The value of taxable property is one thing; the levy is quite another. The levy may be a uniform rate, fixed by statute, or it may be a rate fixed by a body authorized under the statute to fix a rate of levy. The levy is for the purpose of raising the necessary revenue to meet the obligations of the municipality. It often happens that the taxable property within the corporate limits is not *taxed* at its full value. In some instances, the statute provides that property shall be taxed at a certain per cent of its value, or of its assessed value. But the Constitution makes no such limitation upon indebtedness. The constitutional limitation is five per centum of the *value* of the taxable property, and not five per centum of the value fixed for taxing purposes.

In *Windsor v. City of Des Moines*, 110 Iowa 175, it was said (after reciting the provisions of the Constitution hereinbefore referred to) :

"The assessed valuation of the taxable property within the corporate limits of the city of Des Moines, as shown by the state and county lists of the year 1896, was $16,475,260. The authorized debt was, therefore, $823,763."

So it will be seen that, in determining the limit of the indebtedness the city was authorized to incur, the computation was based on the actual value, as shown by the tax list of the preceding year. But further, and more to the point, is *Halsey & Co. v. City of Belle Plaine*, 128 Iowa 467, in which it is said:

"Precisely stated, the contention of the plaintiff is that, as taxes cannot be levied or exacted otherwise than on the basis of the taxable value,—that is, 25 per cent of actual value,—such taxable value must be accepted as the 'value of

the taxable property,' within the meaning of that expression as found in the Constitution. * * *. It is the contention of defendants, on the other hand, that the debt limit provision of the Constitution had relation only to the actual valuation of property as the same may be found and returned by the assessor, for taxation purposes. * . * * It thus becomes apparent that we have, as the sole question in the case: What basis of valuation, in view of the present statute, must be accepted from which computation of lawful indebtedness shall be made? * * * Now, the time of the adoption of the Constitution, and, for that matter, continuing down to the appearance of the present Code, the law of making property assessments for the purpose of taxation recognized no other basis than that of full values. This was known to, and, we must assume, was in the minds of, the makers of the Constitution. And from this it is an easy step to the conclusion that, in accepting property valuations as a basis from which computation for limitation purposes was to be made, no more was intended than the meaning conveyed by the literal reading of the provision. If this view be sound, then an observance of such provision involves, first, an inspection of the tax list, to ascertain the amount of taxable property, in value, in the city; and, second, avoidance of debt beyond the limit of five per cent of such value. How, then, is the situation affected by the appearance of Code Section 1305 upon the statute books? The reason for the enactment of that section is not difficult of ascertainment. It is common knowledge that, prior thereto, the law on the subject of making assessments was persistently and universally violated, and the purpose and intent of the enactment in question was to secure, as nearly as possible, a compliance with the law requiring assessors to find and return properties at the full value thereof, and to the end that uniformity might obtain. The provision that taxes should be imposed only on the basis of twenty-

five per cent must be said to have been matter of inducement only. Certainly, it was not intended to change the duty of assessors in making assessments. With each of them, the duty is now, as before, to enter upon the assessment roll the full value of property, each within his respective district. The difference—and it is the only one—is that, when the tax levy comes to be spread upon the treasurer's book, a basis of twenty-five per cent of the assessed or actual value is required to be adopted for that purpose. Such a provision cannot, therefore, be said to change or give a new meaning to the expression as found in the Constitution, 'the value of the taxable property.' Moreover, the 'taxable value' could not, by any reasonable interpretation, be held to be synonymous with, or the equivalent of, 'the value of the taxable property.' "

See, also, *France v. City of Des Moines*, 183 Iowa, 1311, in which this court recognized the actual value of the taxable property within the corporate limits as a basis for determining whether or not the indebtedness exceeded five per centum of the value of the taxable property.

So we say that, in no event, does it appear that, in contracting the indebtedness here under consideration, the city exceeded the constitutional limitations upon its rights.

It is next contended that there was no jurisdiction to proceed in the matter of paving; that certain things essential to the jurisdiction were not done.

Before proceeding to a consideration of what was actually done or omitted, we have to say that the authority of the city to act, and the manner of its acting, is controlled by those statutes which govern the action of

4. MUNICIPAL CORPORATIONS: public improvements: assessment proceedings.

cities under special charter. So we turn to Section 965 of Chapter 14 of Title V of the Code Supplement of 1913, which deals with cities under special charter, and we find this section reading:

"Before the council orders any street improved or sewer constructed, it shall direct the engineer to prepare a plat, showing the location and general nature of the improvement, the extent thereof, the one or more kinds of material, * * * and an estimate of the cost thereof, and the amount assessable * * * upon each lot or parcel of land adjacent to or abutting on such improvement per front foot or square foot in area, and file such plat and estimate in the office of the clerk or recorder. Notice of its intention to make such improvement shall be published by the city clerk or recorder in three consecutive issues of a newspaper of such city, stating that such plat is on file, and, generally, the nature of the improvement, its location, one or more kinds of material to be used, and an estimate of its cost, fixing the time before which objections thereto can be filed, which time shall be not less than five days after the last publication of such notice. The council, after considering such objections, shall determine what changes, if any, shall be made in the plan shown by such plat, and may, by resolution, order such improvement, prescribing generally the extent of the work, the one or more kinds of material * * * when the work shall be completed, the terms of payment, and provide for the publication of notice asking proposals for doing such work, and the time the same will be acted upon."

Section 971, Code Supplement, 1913, provides:

"After filing the plat and schedule referred to in Section 821, Chapter 7, of this title, the council shall direct the clerk or recorder to give ten days' notice, by publishing same three times in a newspaper published in said city, that such plat and schedule are on file in the office of the clerk, fixing a time within which all objections thereto or to the prior proceedings must be made in writing; and the council, having heard the objections and made necessary correc-

tions, shall levy the special assessment as shown in such plat and schedule."

Before anything was done, the city passed a resolution, known in the record as Resolution 216, and called "a resolution of necessity." It recites that the welfare of the city required that certain alleys and streets in the city be paved, naming them, and describing the character of material to be used, etc., and then appoints and instructs, in said resolution, that Theodore S. DeLay, an engineer of the city, prepare a plat and schedule of the proposed improvement, showing the location and general nature of the improvement and the extent thereof, together with the estimated cost and the amount to be assessed against the various property owners abutting thereon, and to file such plat and estimate in the office of the clerk. This was all that the statute required, to initiate the work. The engineer, in pursuance of this resolution, prepared a plat, showing the location and general nature of the improvement, the extent thereof, the one or more kinds of material to be used, and an estimate of the cost thereof, and the amount assessable upon each lot or parcel of ground adjacent to or abutting on such improvement. This plat and estimate were duly filed in the office of the clerk. The plat so made by the engineer is not in this record. The schedule of assessment, however, is. The plat is said to be lost or mislaid, and, in its absence, we have the engineer's testimony to the effect that he prepared the plans and specifications substantially as directed; and we find that he did this. The schedule of assessment shows the description of the property subject to special assessment, the name of the owner, and the total estimated assessment. There is not shown to be any substantial departure from the requirements of the statute in relation to the preparation of the plat, the location and general nature of the improvement, the extent thereof, or the kind of material to be used. The estimate before us conforms to the statute. Upon the

filing of the plat and the approval of the same by the city, as conforming to the requirements of the law, the council passed a resolution, approving the plat and schedule of the engineer.    After this, a resolution, known as No. 219 in the record, was passed, fixing the time for the hearing of

5. MUNICIPAL CORPORATIONS: public improvements: notice: publication in special charter city.

any objections to the passage of the proposed resolution, and to the construction of the improvement.    The time was fixed at 8 o'clock P. M., on the 21st day of May, 1917, and the resolution directed the city recorder to give notice, by publication in a designated paper, of the pendency of the above resolution, and of the time at which the proposed resolution would be considered by the council, and objections heard to its passage.    A notice was duly published in the Mills County Tribune, as directed.    A copy of the resolution, known as No. 219, was attached to and published with the notice.

There seems to be no question as to the notice, but objection is made to the proof of service.    Proof of the service is in these words:

"I, Earl A. Davis, being duly sworn, depose and say, that I am publisher of the Mills County Tribune, a newspaper published at Glenwood, in and for said Mills County, and that a notice, a copy of which is hereto attached, was published in said newspaper three consecutive issues, the last being on May 14, 1917."

Some contention is made that the service is insufficient, in that it was not published in three issues.    We do not concern ourselves to answer this, because there is no proof, except the affidavit above set out, and this shows that it was, in fact, published in three consecutive issues.

But it is claimed that Section 823 of the Supplement to the Code, 1913, requires two publications in each of two newspapers published in the city.    We had to deal with this contention in *Diver v. Keokuk Sav. Bank*, 126 Iowa 691,

and held that Section 823 does not apply to a city under special charter; that the duty of cities under special charter is governed by Section 971; that Section 971 was not repealed; that Section 823 relates to notice in cities acting under the general law. But, even if Section 823 did apply, it will be noticed that, in Section 823, the statute says, "if there be that number, otherwise in one." There is no evidence that there was more than one paper in this city. So, under either theory, there is nothing to plaintiffs' contention that the notice was not properly served.

It is next contended that the whole cost of the assessment exceeded the estimated cost, and that this was not allowable, under the law.

There is no evidence in this record showing that the actual cost of the improvement exceeds the estimate. It seems to be conceded in argument, however, that the actual contract price for paving in the aggregate amounted to a sum in excess of the estimated cost. The requirement of Section 965, to the effect that the engineer shall report to council an estimate of the cost of the improvement, is not intended to limit the cost absolutely to the estimate so made. It is a guide to the council in determining whether or not the improvement should be made. It is quite impossible, in estimating the cost of a public work of this kind, to determine in advance the actual cost the city will incur in its completion. The estimate often proves inadequate. It is only for the purpose of advising those who may be called upon to meet the expense, when incurred, of the probable cost, as a basis for concluding whether the probable cost will exceed the probable benefits to be conferred by the improvement. If cities were to be held to a strict rule in estimating costs, it would never be safe to enter upon any scheme of public improvement. After the estimate, and before the contract is let, there may

6. MUNICIPAL CORPORATIONS: public improvements: contract price exceeding estimate.

be such an increase in wages and cost of material that it would be utterly impossible to perform the work within the limits of the estimate. In the absence of fraud or collusion, or something of that sort, the fact that the completed work exceeds the amount of the estimate does not leave the city without jurisdiction to assess abutting property its proportionate share, measured by the rules governing the special assessment. It was not necessary that the engineer estimate each item that enters into the ultimate estimate of costs. In Page and Jones on Taxation, Volume 2, Section 819, we find this:

"By the specific provision of some statutes, a contract cannot be let for a price exceeding that specified in the estimate, and an assessment cannot be levied in excess thereof. * * * Under most statutes, however, there is no restriction of the amount of the final assessment to the amount of the preliminary estimate. Under such statutes, the estimate is advisory merely; and the assessment is valid, although the amount of the assessment exceeds the amount of the estimate, if the assessment is levied after the improvement is completed, and the actual cost thereof determined."

We do not find anything in the statute limiting the actual cost of the improvement to the preliminary estimate. In *Nash v. City of St. Paul,* 23 Minn. 132, it was said that the board of public works had no authority to contract that the work to be done be limited to such an estimate. The general rule is that, where there is no limitation in the statute,—no provision in the statute, that the contract price and the final assessment for benefits shall not exceed the preliminary estimate,—the preliminary estimate is not a limitation on the contract price. In *Auditor General v. Chase,* 132 Mich. 630 (94 N. W. 178), it was held that assessments may be made to cover the actual expense, though the amount exceeds such estimate. The same rule was sug-

gested by our own court in *Simpson v. Board of Super-*
*visors,* 186 Iowa 1034; and in *Monaghan v. Vanatta,* 144
Iowa 119.

We do not find that there is anything in this contention
of plaintiffs'.

Upon the whole record, we do not find the plaintiffs
have made, a case entitling them to the relief prayed for.
We think the court was right in dismissing their petition.
Its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.